STOULIG, Judge.
The City of New Orleans and Councilman Frank Friedler have appealed a judgment which, by way of writs of mandamus and of injunction, directs the City to issue a Use and Occupancy Certificate to relator, Buffalo’s Watering Hole, Inc. (Buffalo), and enjoins the City from denying an Alcoholic Beverages License on the grounds of failing to comply with fire safety standards quoad exits or to provide adequate off-street parking facilities.
As background we note the City’s actions stem from an effort by Maple Area Residents, Inc., to have four bars on Maple Street (patronized by college students) more closely regulated. Buffalo’s Watering Hole, operated by relator corporation, is one of the four and is located at 7605 Maple Street. Until 1974 the property in question was residential; however, at that time, it was converted to commercial when its owners were permitted by the Board of Building Standards and Appeals to operate a restaurant and bar, providing certain conditions, outlined in a letter dated October 3, 1974, were met. Off-street parking requirements were not mentioned in this letter, because this agency was only concerned with the building code regulations. The then owners of the property had arranged to lease vacant land at 801 Adams Street as a parking lot and according to an affidavit and an architect’s drawing on file with the City, the lot in question provided 25 parking spaces. The Adams location has been used for parking from 1974 to the date of trial.
The business at 7605 Maple has changed hands several timés since the property be *574 came commercial and in July 1976 when Thomas Kuntsler began operating as an individual proprietorship the Buffalo’s Watering Hole, he testified he assumed the parking lot went with the business and was unaware of any requirement for a recorded lease for the parking area. Kuntsler apparently had no trouble obtaining the requisite licensing until after the civic group sought tighter regulation.
Once the residents complained, the various agencies of the City were marshaled to scrutinize Buffalo’s operation until finally this litigation was initiated by the individual owners of the bar seeking damages and injunctive relief against the City from police raids that allegedly were ordered for harassment purposes. That suit was filed October 4, 1977.
In December 1977 Kuntsler incorporated Buffalo. Thereafter the applications for the needed municipal permits and licenses were applied for in the name of the corporation. Joan Glennon, the city official responsible for issuing Alcoholic Beverage Licenses, testified Buffalo’s request was denied because it was not in compliance with Safety and Permits Section 530 of the Code. We need not develop the City’s claim of deficiency here but simply note that Buffalo obtained a temporary restraining order several weeks later requiring Glennon to issue the license until a hearing could be had. The temporary restraining order was extended several times but when it expired, Glennon recalled the license because Buffalo now allegedly was not furnishing requisite off-street parking. Buffalo then filed this mandamus.
When this matter was tried, the City narrowed the factual issues by conceding there were two complaints against Buffalo: (1) there was no panic hardware on one exit door and (2) Buffalo was required to furnish 24 parking spaces and the Adams Street parking location did not have sufficient spaces to accommodate 24 vehicles.
There is no dispute that the panic hardware deficiency was remedied prior to trial and although considerable testimony was adduced as to the parking lot, there is no evidence in the record that either proves or disproves the Adams Street parking facility does not meet City standards and requirements.
All plans on file with the City indicate the Adams location has 25 parking spots. City officials testified that when plans are stamped by a licensed architect, as these were, there is no visual inspection by the City to ascertain the accuracy of the sketch. It was the alleged lack of adequate parking that became the basis for denying the Use and Occupancy Certificate. In this case once withholding of the Alcoholic Beverage License was justified by Buffalo’s lack of a Use and Occupancy Certificate, the parking adequacy became relevant.
Buffalo’s application for the certificate was accompanied by an architect’s sketch, duly certified, that the Adams lot contained 25 parking spaces. However, in processing this application, the City sent an inspector to verify the accuracy of the architect’s representation.
Frank E. Robin, with the Safety and Permits department, testified the plaintiff lacked seven of the required 24 spaces. He conceded that Buffalo could pick up six parking spots by closing two drive exits from the parking lot, removing a sign, and utilizing space for parking generally reserved for front yard setback. While the setback requirement in this neighborhood requires nonusage of property within a designated footage from the front property line, the fact that more than 40% of the structures on this block are noncomplying relieves Buffalo from adhering to the rule.[1]
In essence Robin conceded that Buffalo would have 23 available spaces with the proposed parking lot modifications. The parking space required by the City is determined by the floor area of the establishment. For each 150 square feet of floor area the business must furnish one space. Buffalo has a 3,468-square-foot floor area *575 and thus needs 23.12 parking spaces. When the parking space' determination results in a fractional number, the total is rounded off to the next number. Each parking spot must be a minimum of 180 square feet with a minimum width of 8 feet. Ordinance 4264 M.C.S., adopted April 23, 1970, effective August 1, 1970, Comprehensive Zoning Ordinance for City of New Orleans art. 7, § 5.1.
Although Robin was assigned to check the sufficiency of the parking facility, he did not measure the lot and was not in a position to testify that if properly striped the Adams location could not accommodate 24 cars.[2] We point out that it was also within the plaintiff’s ability to adduce this proof.
The trial court based its judgment on equitable consideration; however, because there is positive law regulating zoning, it is error to make a determination based on equity. C.C. art. 21 permits equitable judgment in the absence of express law.[3] In the interest of justice, we will remand this matter for two purposes, namely, to permit the litigants to determine whether the parking lot will or will not accommodate 24 vehicles if properly striped and to adduce evidence on this issue. Further, plaintiff should exhaust administrative remedies by applying for a variation before the Board of Appeals should both litigants concede the lot is insufficient to accommodate the vehicles.
Buffalo contends that the City cannot challenge its parking arrangement as insufficient because it has had notice of the deficiency for more than two years and has failed to act. R. S. 9:5625 establishes the zoning prescription but stipulates the City must have actual notice. The fact that supporting documents sat in the City’s files does not in our view constitute actual notice. The City had no actual notice until after this suit was instituted. If, in fact, there is a space deficit, certified plans furnished the City by prior owners, as well as plaintiff, misrepresent the situation, thus these documents could not form a sufficient basis from which we would decide the City had actual notice.
For the reasons assigned, the judgment appealed from is annulled and this matter is remanded for further proceedings consistent with the views we have outlined. Costs will be assessed upon final determination of this matter.
ANNULLED AND REMANDED.
REDMANN, J., dissents with written reasons.

. Ordinance 4264 M.C.S., adopted April 23, 1970, effective August 1, 1970, Comprehensive Zoning Ordinance for City of New Orleans art. 10, § 9.5.

. Robin did, however, point out that the parking spaces shown on the architect’s plan did not meet the minimum requirements for square footage per space.

. At the conclusion of the trial, the judge stated: “The Court is of the opinion that the violation of the off street parking which numbers lacking between four and seven parking spots, is not that great, which would allow the City not to issue the Use and Occupancy Permit.”