LANIER, Judge.
This is a devolutive appeal from a trial court judgment which granted a variance to a parish land use (zoning) ordinance pro *595 vision which required a minimum side yard building setback of ten feet.
FACTS
Arthur and Julie Brennan Tolis (Tolises) are the owners of, and reside at, Lot 200, Phase 8, Quail Ridge Subdivision, in St. Tammany Parish, Louisiana. C. Cooper Construction Co. (Cooper)[1] owns Lot 199 in Phase 8 of Quail Ridge Subdivision.[2] Lot 199 borders on Lot 200.
On or about September 10, 1985, Cooper applied to the St. Tammany Parish Police Jury (Parish) for a building permit for Lot 199. The Quail Ridge Subdivision plat contained a restrictive covenant which provides, in pertinent part, that “side building setback will not be less than 5 feet from each side property line[.J” The plat also indicated that this area of the Parish was zoned A-3, which, according to the Parish’s Comprehensive Land Use Plan, requires that all buildings, except accessory structures, shall have “two side yards, one on each side of the building, having a minimum width of 10 feet each.”[3] The plot plan attached to Cooper’s building permit application showed the building (residence) to be located on the lot would have a ten foot side yard setback adjacent to the Tolis-es’ lot. Cooper was issued the permit on September 10, 1985.
When the forms for the concrete slab on Lot 199 were put into place in early November of 1985, the Tolises discovered that Cooper was preparing to build with only a five foot side yard setback.
On or about November 17, 1985, before the slab was poured, Mrs. Tolis contacted the Parish’s Department of Engineering Violations Section and complained that Cooper was building too close to the property line. After an inspection, the violations section posted a written notice on Lot 199 indicating that the construction may be in violation of the ten foot setback requirement. Mr. Carlos B. Cooper, Cooper’s president, made several phone calls thereafter to Allen Cartier, the director of the Parish’s Department of Development, the District Attorney’s Office and Dan Smith, the permit inspector of the Parish’s Department of Engineering, who stated that, in their opinion, Cooper could proceed with construction. On November 20, 1985, Mrs. Tolis talked to Mrs. Cooper, who also worked for Cooper, and requested that Cooper wait until the matter was resolved before pouring the slab. Mrs. Tolis then called Dan Smith and Allen Cartier, who informed her that “there was no permit of record and that no one was going to pour a slab ... with a five-foot side setback.” The slab was nevertheless poured on the morning of November 21, 1985. The Tolis-es reurged their complaint and were instructed to attend the Parish’s Board of Adjustments (Board) meeting on December 10, 1985, which they did.
At the December 10, 1985 meeting, the Parish requested a variance from the ten *596 foot side yard setback requirement for several lots in Quail Ridge Subdivision, including Lot 199. After taking evidence and hearing arguments from those involved at both the December 10 meeting and a January 14, 1986 meeting, the Board voted “to deny the variance request and let those individuals whom [sic] have a setback violation, to [sic] apply for variances themselves.”
At the February 12, 1986 meeting of the Board, Cooper requested a variance from the side yard setback requirement on Lot 199, and it was granted. The Tolises appealed this decision to the district court claiming they were not properly notified of Cooper’s variance request. The district court agreed, rescinded the Board’s decision of February 12, 1986, and remanded the case to the Board.
On September 9, 1986, Cooper’s request was reconsidered by the Board, with the Tolises opposing the request. After hearing evidence and argument by counsel, the Board passed the following motion which was made by Board member Barbara Dodds:
That we deny the variance request for lot 199 for the following reasons:
1. The building permit application submitted by the applicant clearly showed a 10 ft. sideyard setback for his building “envelope”. This was the basis for the issuance of his building permit and he is required to build within the confines of that “envelope” or submit a request for approval of a new plot plan. He had legal and clear notice of his deviation from the sideyard setback requirement. In my opinion, the builder created his own hardship by not following legal requirements.
2. There is nothing unusual about the land or shape of the building lot.
3. Initially it would have been a mere inconvenience for the builder to either file a new plot plan or to move his forms.
However, as part of this denial, I move we add the following stipulations;
1. The builder not be required to alter his building and to be entitled to receive an occupancy permit upon satisfactory completion of his building. All parties involved share in the burden of responsibility for what has happened. The BUILDER, because he would not abide by his submitted plot plan nor wait to file an amended plan before pouring his slab. The GOVERNING BODY for accepting a Subdivision Plat with conflicting data recorded on it and for aborting orderly procedure, particularly when a complaint from an abutting property owner claiming to be aggrieved by the actions taken by the builder, and the COMPLAINANT who must be presumed to have received at act of sale, a survey of his property clearly showing sideyard setback “building envelope” lines of 5 feet. An order giving permission to proceed with construction was issued after the BOA February decision to grant the variance with was based on the best information we had at that time. No advice regarding the legal properties of the PLOT PLAN SUBMITTED WITH THE BUILDING PERMIT APPLICATION HAD YET BEEN RECEIVED BY THE BOARD FROM THE DA. (That decision was declared void by courts).
It would be patently unrealistic, in view of all of these circumstances to require alteration of the building. Additionally, upon inspection of the site, I found the abutting wall of the complainants [sic] house to be windowless and to be the side which houses the air conditioning condensing unit. The houses have dissimilar front setbacks as do many of the surrounding houses which tends to offset any appreciable visual impact that a lesser sideyard setback might present. If the line is viewed very carefully straight on, some difference can be discerned if one views a combined 20 ft. distance between two houses.
Therefore, to mitigate this discemable difference, I would also stipulate the following:
*597 2.That the builder on lot 199 be required to plant at his expense living materials arranged in a landscape plan. This plan is to be designed by a professional (A.L.A.) landscape architect and be designed to both screen each house from the other and use the space in an attractive manner. It is to be approved by a designee/s of this Board and the plant materials must come from a licensed, State certified source. The planting may be done on both the complainants property (with complainants permission) and the builders lot to ensure adequate care of the screen and if complainant declines, the planting must go on lot 199. The planting must be completed by November 30, 1986.
The Tolises appealed this decision to the district court pursuant to La.R.S. 33:4727. The district court took additional evidence and rendered judgment “in favor of the defendants, cross-claim petitioners, Carlos B. Cooper and C. Cooper Construction Co., and against the cross-claim defendant, St. Tammany Parish Board of Adjustments, modifying the decision of the St. Tammany Parish Board of Adjustments dated September 9, 1986 in Case No. 06-17-86, to grant the variance as requested with the imposition of landscaping restrictions as more fully set forth in the September 9, 1986, decision.”
This devolutive appeal followed.
GRANTING OF THE VARIANCE

(Assignment of Error Number 1)

The Tolises contend the district court “erred in granting the appellee’s variance, thereby, reversing the decision of the BOA which had denied the variance[.]”
In his reasons for judgment, the district judge stated, in pertinent part, as follows:
This Court is not going to try and substitute itself for the Board of Adjustments. It is absolutely forbidden by law to do that. The only thing this Court can do is review. Despite what Mrs. Dodds tells me, and I think it was the intention of the Board of Adjustments to grant this variance, not to deny it. That language, if you literally read it, I guess you could read into it her interpretation of it. But I think you have to either deny the variance or you can grant the variance. If you look at the modified phrase, “with or without conditions,” it goes to the granting of a variance rather than to the denying of a variance, and the Court is going to so hold and rule that the Board of Adjustments intended to grant this variance with conditions as stated in the motion.
We disagree with the conclusion of the district judge that the Board “intended to grant this variance.” Article XIII of the Rules of Procedure and Policy for the Board provides, in pertinent part, as follows:
POLICY OF THE BOARD OF ADJUSTMENT
It shall be the duty of the Board of Adjustments to hear and make determinations on appeal in the following instances:
1. From applicants who have been refused a building permit because of a violation or conflict with the Zoning Ordinance or the official zoning map, including errors, ommissions [sic] or conflicts after receiving available information from the Parish Department of Development concerning the intent of this Ordinance in the related instance.
2. Where it is alleged that there is an error in any order, requirement, decision or determination made by an administrative office in the enforcement of the Zoning Ordinance.
3. Have the power to permit exceptions to or variations from the Zoning regulations of the Zoning Ordinance in classes of cases or situations and in accordance with the principles, conditions and procedures specified in and subject to the limitations imposed by the Zoning Ordinance.
4. To hear and determine cases of hardship whereby a landowner, under the strict enforcement of the Zoning Ordinance, is prohibited from a just and reasonable use of land — a use which must be compatable [sic] with the community at-large.
*598 SPECIAL USE EXCEPTIONS
The authority of the Board to grant special use exceptions has not been established at this time.
[[Image here]]
2. Special Yard Exceptions
(a) An exception in the yard regulations on a lot which abuts another lot on which front, side or rear yard is similar to the exception applied for.
(b) An exception to an interior side yard requirement where such a side yard is contiguous to a permanent open space such as a park or playground.
(c) An exception where there are irregularities in depth of existing front yards on a street frontage on the side of a street between two intersecting streets, so that any one of the existing depths shall, for a building hereafter constructed or extended be the required minimum front yard depth.
[[Image here]]
VARIANCES
Consistent and in accord with the provisions of the ordinance, the Board shall have the power to grant the following variances:
(1) A variation in the yard, lot width, depth or frontage, lot area per family, spacing of buildings, floor area ratio, open space ratio and parking requirements in any district so as to relieve practical difficulties or particular hardships in cases when and where, by reason of exceptional narrowness, shallowness, or shape of a specific property at the time of the enactment of such regulation or restriction or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such property, the strict application of such regulation or restriction would result in peculiar and exceptional practical hardship upon the owner of such property. Such grant or variance shall comply, as nearly as possible, in every respect with the spirit, intent and purpose of this ordinance and the granting of a variation shall be only for reasons of demonstrable and exceptional hardship as distinguished from variation sought by applicants for purposes or reasons of convenience, profit, or caprice.
[[Image here]]
STANDARDS FOR VARIANCES
The Board of Adjustments shall not authorize a Variance from the requirements of this Ordinance unless it shall make findings based upon the evidence presented to it that each special case shall indicate all of the following:
(a) Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
(b) Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by the other properties in the same district under the terms of the Zoning Ordinance.
(c) The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interested [sic] in the property.
(d) Granting the Variance requested will not confer on the applicant any special privilege which is denied by the Zoning Ordinance to other lands, structures, or guidlings [sic] in the same district or similarly situated.
(e) The Variance, if granted, will not alter the essential character of the locality.
(f) If the strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner as distinguished from mere inconvenience.
(g) The purpose of the Variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party or parties.
(h) The granting of the Variance will not be detrimental to the public welfare *599 or injurious to other property or improvements in the neighborhood in which the property is located.
(i) The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public streets, or increase the danger of fire, or endanger the public safety.
The September 9, 1986 motion of the Board and the record itself reflect that standards for variance (a), (c) and (f) were not met in this case. The testimony of Barbara Dodds, taken by the district court, also indicates that standard (d) was not met. There is no evidence of record from which the district court could have concluded that all of the Standards for Variances had been met.
Cooper contends in brief that special conditions do exist due to the conflict between the restrictive covenant and the zoning ordinance. However, La.R.S. 33:4729 provides, in pertinent part, as follows:
Wherever the regulations made under authority of R.S. 33:4721 through R.S. 33:4729 require a greater width or size of side yards, courts, or other open spaces, ... or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of R.S. 33:4721 through R.S. 33:4729 shall govern.
This contention is without merit.
Cooper also contends that other homes were built with five foot side yard setbacks and, therefore, standard (d) was met. Even if we assume appellee is correct, there is still no evidence that standards (a), (c) and (f) were met. There is nothing peculiar about Lot 199. Cooper clearly had knowledge of the A-3 zoning requirement when he submitted his building permit application, whether it was actual or constructive knowledge. Cooper had actual knowledge of the A-3 zoning requirement prior to the pouring of the slab. No “demonstrable hardship” would have been imposed on Cooper to simply conform his construction to his plot plan at that time. Cooper poured the slab even though it did not comply with the side yard setback in his permit or the zoning ordinance. Because there is positive zoning law in this case, we may not apply equity to resolve it. La.C.C. art. 21; Kuntsler v. Friedler, 376 So.2d 572 (La.App. 4th Cir.1979).
Accordingly, the Board was correct in denying the variance request. The trial court was clearly wrong in determining as a fact that the Board had a contrary intent and was legally wrong in granting the variance.
This assignment of error has merit.
EXISTING VIOLATION SUBJECT TO SPECIAL USE CONDITIONS

(Assignment of Error Number 2)

The Tolises contend the district court “erred in permitting the appellee’s violation of the A-3 Zoning side yard setback requirements to remain subject to the special landscaping conditions established by the BOA in its resolution of September 9, 1986.” Article I of the Rules of Procedure and Policy for the Board provides, in pertinent part, as follows:
FINAL DISPOSITION OF APPEAL OR APPLICATION
1. The final disposition of any appeal or application for variation or modification shall be in the form of a resolution. In the case of an application for variation or modification, the resolution shall set forth that the application is denied or that it is granted with or without conditions and said resolution shall specifically set forth what variations or modifications are permitted and what conditions, if any, shall be complied with.
We agree with the district court that this language means that the denial of a variance request precludes allowing the alleged violation to remain with or without conditions. Special use conditions are only authorized if a variance is granted. Article XIII also provides, in pertinent part, as follows:
CONDITIONS ATTACHED TO APPROVALS
Where, in these regulations, special exceptions are permitted, provided they are *600 approved by the Board of Adjustments, where the Board is authorized to decide appeals or approve certain uses, and where the Board is authorized to approve variances such approval, decision, or authorization shall be limited by such conditions as the case may require,....
Articles I and XIII must be construed in pari materia, La.C.C. art. 17.
The Board clearly denied the variance request in this case but, nevertheless, permitted the violation to remain with special conditions. The record does not contain any evidence that would justify the granting of a Special Use Exception under Article XIII. Accordingly, we find that the Board committed legal error by allowing the violation to remain contrary to its own rules.
This assignment of error has merit.
DECREE
For the foregoing reasons, the judgment of the district court is reversed, and judgment is rendered in favor of the Tolises denying Cooper’s variance request, setting aside the special use conditions and ordering Cooper to remove those portions of the construction which are in violation of the ten foot side yard setback within sixty days after this judgment becomes executory. Cf. Lakeshore Property Owners Association v. City of New Orleans, Zoning Board of Appeal and Adjustments, 481 So.2d 162 (La.App. 4th Cir.1985), writ denied, 484 So.2d 674 (La.1986). Cooper is cast for all costs.
REVERSED AND RENDERED.

. Carlos B. Cooper was also made a defendant, in his individual capacity, as well as the St. Tammany Parish Police Jury and the St. Tammany Parish Board of Adjustments.

. In his answer, Carlos B. Cooper denied any interest in Lot 199 in an individual capacity.

. Cooper does not contest the validity of the A-3 zoning designation. The Comprehensive Plan of St. Tammany Parish, adopting the A-3 zoning regulation, provides, in pertinent part, as follows:
AN ORDINANCE establishing the comprehensive land use regulations for the St. Tammany Parish Planning Area and providing for the administration, enforcement and amendment thereof, in accordance with the provisions of the authority granted by Act 518 of the 1954 session of the Louisiana Legislature.
ADOPTION
WHEREAS, the Police Jury deems it necessary for the purpose of promoting the health, safety, morals, or general welfare of the Parish to enact such an ordinance; and the Police Jury has appointed a planning commission to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. The Planning Commission has divided the parish into districts and has prepared regulations pertaining to such districts in accordance with a comprehensive plan designed to lessen congestion in the streets; to prevent over-crowding of land; to secure safety from fire, panic, and provide adequate light and air; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks, and other public requirements.