J^PLOTKIN, Judge.
On consideration of the application for rehearing filed by plaintiff James V. St. Raymond, we recall our original opinion affirming the trial court judgment that denied Mr. St. Raymond’s writ of preliminary injunction relative to a Stop Work order issued by the City of New Orleans. After additional thorough review of the record evidence — especially the evidence related to the arbitrary nature of the City’s actions in this case, we find that the trial court abused its great discretion in refusing to grant Mr. St. Raymond’s writ of preliminary judgment. Accordingly, we enter judgment reversing the trial court judgment and granting Mr. St. Raymond’s writ of preliminary injunction. For the reasons explained more fully below, the City of New Orleans is hereby preliminarily enjoined from preventing Mr. St. Raymond from completing construction of three townhouses at 1400-1404 Audubon Street.
In his application for rehearing, Mr. St. Raymond takes exception to this court’s recitation of a number of facts in our previous opinion. However, only one of those facts is material to our decision to reverse the judgment denying the writ of preliminary injunction. In our original decision, we found that Mr. St. Raymond had failed to establish a prima facie case of entitlement to a preliminary injunction |¡>because he failed to show that the original Stop Work order issued by the City on April 19, 1999 was ever lifted. Our finding that Mr. St. Raymond continued construction in blatant violation of the Stop Work order was the pivotal fact in our decision.
However, as Mr. St. Raymond points out in his application for rehearing, his claim that the City officially lifted the Stop Work order and allowed him to resume construction on the townhouse project was set out in his verified petition and in his affidavit, both of which are competent evidence in the absence of denial by the defendant, the City of New Orleans. Not only did the City fail to deny that claim, it actually *564 corroborated that claim through evidence submitted in support of its exception of subject-matter jurisdiction.[1] For example, in its brief in support of that exception, the City stated as follows:
[T]he Department issued a Stop Work Order on or about April 19, 1999, citing a violation of the Building Code Ordinance Number 12,753 M.C.S. & 14,224 M.C.S. Subsequently, plaintiff wrote to the Director of the Department a letter requesting that the Stop Work Order be lifted based upon an interoffice memorandum .of Deborah Wilson sent to the City Planning Commission. The Director thereafter allowed the work to continue after a review [of] information submitted with the permit application.
(Emphasis added.) Moreover, Defendant’s Exhibit 5 attached to the City’s exception is the affidavit of Keith T. Johnson, acting director of the Department of Safety and Permits. Mr. Johnson attested that after the issuance of the first Stop Work order he “permitted the work to continue” until the issuance of the second Stop Work order.
laThus, Mr. St. Raymond’s decision to commence construction after the issuance of the first Stop Work order was officially sanctioned by the City. Accordingly, the pertinent inquiry for determining this appeal is whether Mr. St. Raymond proved entitlement to issuance of a preliminary injunction prohibiting the City from enforcing the second Stop Work order, issued on June 17, 1999.
As explained in our original opinion, a moving party is generally entitled to issuance of a preliminary injunction only if he proves the existence of three elements: (1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case. A to Z Paper Co., Inc. v. Carlo Ditto, Inc., 98-1417, p. 9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708. See also General Motors Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La.1979). In our original opinion, we determined that Mr. St. Raymond had failed to prove the first element required for entitlement to a preliminary injunction—i.e., irreparable harm. However, our original decision was based on our finding that Mr. St. Raymond failed to prove that he had suffered irreparable harm at the time the first Stop Work order was issued on April 19, 1999. As we previously held, the record indicates that the only action taken by Mr. St. Raymond at that time was the driving of pilings. Mr. St. Raymond stated in his letter to the City as follows: “I am just days away from filling and pouring the foundation.” Following the City’s decision to lift the first Stop Work order, the record reveals that Mr. St. Raymond incurred substantially more expense in reliance on the building permit, as explained in more detail below. Nevertheless, as stressed by the dissent, the fact that Mr. St. Raymond has now suffered additional monetary losses is insufficient to support a finding of irreparable harm.
|4However, the inquiry does not end there because the jurisprudence establishes one exception to the “irreparable harm” requirement for issuance of a preliminary injunction. That exception arises whenever “the action sought to be enjoined directly violates the constitution or prohibitory law.” St. Charles Gaming Co., Inc. v. Riverboat Gaming Commission, 94-2697, p. 5 (La.1/17/95), 648 So.2d 1310, 1314. Under the facts and circumstance established by the record in this case, we originally found that the City’s issuance of the first Stop Work order did not violate the constitution or prohibitory law. Id. However, our finding on reconsideration *565 that the City allowed Mr. St. Raymond to resume his construction project after the first Stop Work order was issued requires that we perform a new analysis in order to determine whether the issuance of the second Stop Work order on June 17, 1999 violated the constitution or prohibitory law.
Relevant to this inquiry is the following language from 13 Am Jur.2d Buildings § 10, adopted by this court in Dunn v. Jefferson Parish, 256 So.2d 664 (La.App. 4 Cir. 1972), writ denied, 260 La. 1137, 258 So.2d 382 (1972):
It has been generally held that a municipal building permit or license may not arbitrarily be revoked by municipal authorities, particularly where, on the faith of it, the owner has incurred substantial expense. Such a permit has been declared to be more than a mere license revocable at the will of the li-censor. When in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vest property right to the protection of which he is entitled.
Id. at 667 (emphasis added). Under the above principle, this court must answer the following two questions in order to determine whether Mr. St. Raymond is entitled to issuance of the preliminary injunction under the exception to the “irreparable injury” requirement: (1) whether the City’s decision to revoke the building permit was arbitrary, and (2) whether, on the faith of the building permit, Mr. St. |fiRaymond incurred substantial expense. If the answer to those two questions is “yes,” Mr. St. Raymond has acquired a constitutionally-protected vested right in the building permit “of which [he] cannot now be deprived.” Id.
Concerning the first question, we find that the City’s actions were clearly arbitrary. Our decision to that effect is based on the documentation submitted by the City itself in support of its exception to jurisdiction. The documents attached to the exception reveal the following facts concerning the City’s actions in relation to the building permit at issue in this case.
October 6, 1988 — City Council passes Ordinance No. 12753, authorizing the conditional use of the property for the construction of townhouses
August 13, 1998 — Assistant city attorney issues interoffice memorandum addressed to the deputy director of the City Planning Commission, indicating that the conditional use ordinance had not elapsed
January 21, 1999 — New Orleans Department of Safety and Permits issues Building Permit # B98006019 approving a new construction project of a multi-family dwelling
April 19, 1999 — First Stop Work order issued
June 17, 1999 — Second Stop Work order issued
It is the totality of those actions, viewed in light of the City’s own explanations for those actions, that convinces us that the City acted arbitrarily in issuing the second Stop Work order. First, the City Attorney found that the conditional use ordinance had not lapsed, and so informed both Mr. St. Raymond and the City Planning Commission.[2] Second, the City issued the work permit. Third, the City issued a Stop Work order on April 19, 1999. Fourth, the City lifted |fithe first Stop Work order. Fifth, the City issued a second Stop Work order on June 17, 1999. This is not a case where the City issued a building permit, then found it was invalid and revoked it; the City reviewed this *566 building permit several times, and yet never documented any defect in the permit itself. The City’s documents reveal that the second Stop Work order was not issued because the building permit was improperly issued; it was issued because the City Council revoked the conditional use ordinance.
As noted, our decision that the City acted arbitrarily is supported by the City’s own stated explanations for its actions. Mr. Johnson’s affidavit states, in pertinent part, as follows:
That Affiant issued the STOP WORK ORDER to permit an opportunity to review the information presented to the permit analyst, and to review the subject ordinances himself to determine whether the property was zoned to permit the townhouses;
That further the Affiant issued the STOP WORK ORDER to make certain that the applicant had complied with the permit process and to make sure all necessary paperwork was in order;
That after review of all documentation in connection with the permit, Affiant was satisfied that the work could continue, as he had no documentation to conclude that the zoning had reverted back, nor had the Council taken any action subsequent to the STOP WORK ORDER;
That Affiant permitted the construction work to continue until June 17, 1999, when he issued another STOP WORK ORDER following his receipt of an official copy of Ordinance No. 19,237 M.C.S., which purported to repeal the conditional use.
Thus, the City’s own documents reveal that the City performed a thorough review of Mr. St. Raymond’s application for a building permit not once, but twice — at the time the permit was originally issued, and after the issuance of the second Stop Work order. The primary purpose of the second review was “to make certain that the applicant had complied with the permit process and to make sure all necessary paperwork was in order.” The City determined that the applicant had indeed ^complied with the permit process and that all the necessary paperwork was in order and therefore allowed the construction project to continue. No defect in the building permit was discovered during either of the reviews performed. Moreover, the only justification for the issuance of the second Stop Work order was the City Council’s repeal of the conditional use ordinance. Even the basis for the final revocation is unclear from the record.
In fact, the circumstances surrounding the City’s decision to revoke the building permit in this case appear to be remarkably similar to those found arbitrary by this court in Dunn. In that case, the court quoted a letter indicating that the regulatory authority’s decision to withdraw the building permit was based on a threat from an attorney representing the residents of the neighborhood to file a lawsuit. In the instant case, the record indicates that the City’s action in revoking the conditional use permit was encouraged by an organization called the “Audubon Street Association,” which intervened in the suit. According to the “Petition for Intervention,” the “mission” of that organization “is to preserve and protect the interests of its members who are residents of Audubon Street between willow and Claiborne in the City of New Orleans.” Although that organization has a right to intervene in this action under the provisions of La. C.C.P. art. 1091, the Dunn case indicates that a decision to revoke a building permit solely on the basis of complaints from neighbors is arbitrary.
Concerning the second question, we find that Mr. St. Raymond clearly incurred substantial expense in reliance on the building permit issued by the City. Attached to Mr. St. Raymond’s petition were two affidavits showing the expenses incurred by Mr. St. Raymond. First, Mr. St. Raymond attached the affidavit of Tom Stobo, project manager for NSL Construction, Inc., the general contractor on |8the *567 construction project. Mr. Stobo’s affidavit includes a time-line detailing sixteen steps in the work performed on the project between March 11, 1999 and June 21, 1999, as well as ten photographs showing the progression of that work. The photographs clearly reveal that all of the outside walls of the condominium project had been framed and that most of the first floor had been bricked prior to the issuance of the second Stop Work order on June 17, 1999. Second, Mr. St. Raymond attached the affidavit of Cynthia House, president of NSL, listing eleven items of possible damages flowing from the failure to rescind the Stop Work order. We find that evidence sufficient to prove that Mr. St. Raymond incurred substantial expense in rebanee on the building permit prior to the issuance of the second Stop Work order on June 17, 1999. Under the rule enunciated in Dunn, Mr. St. Raymond has established a constitutionally-protected vested property right in the building permit, which relieved him of the burden of proving irreparable harm in order to be entitled to the issuance of a preliminary injunction.
Further, our finding that the City’s issuance of the Stop Work order violated Mr. St. Raymond’s constitutionally-protected vested property right is sufficient to fulfill Mr. St. Raymond’s burden of proving the other two elements necessary to prove entitlement to a preliminary injunction — that is, that he is entitled to the relief sought and that he will be bkely to prevail on the merits of the case. There can be little doubt that Mr. St. Raymond is entitled to the rescission of a Stop Work order that violated his constitutional rights. Moreover, the fact that his constitutional rights are involved is sufficient to show that he is likely to prevail on the merits of his petition for injunction. Accordingly, we find that Mr. St. Raymond has carried his burden of proving a prima facie case of entitlement to ^issuance of a preliminary injunction. We pretermit all other issues raised by Mr. St. Raymond on rehearing.
The- dissent seeks to distinguish this case from Dunn on the basis of the fact that the building permit at issue in Dunn was “validly issued by the Parish and was issued under no error of fact by them and was not the result of any misrepresentation on the part of the Plaintiff, Mr. Dunn.” 256 So.2d at 666. In this case, the City claims that the building permit was issued under an error of fact — namely, the following conclusion stated in the Assistant City Attorney’s interoffice memorandum:
I believe that the parties involved in the Audubon Street Townhome Project took numerous concrete actions between December 6,1990 and November 7,1991 which both individually and collectively constitute legitimate “development and construction of the conditional use authorized herein.”
That finding was significant because the conditional use ordinance issued by the City in 1989, and renewed in 1990, became null, void and of no legal force and effect if the development or construction was not commenced by November 7, 1991. Thus, the dissent would find that Mr. St. Raymond’s building permit was issued under error of fact.
The dissent’s assertion that this court made a factual finding in Dunn that “there was no error in fact or law” cannot be denied. However, as we read that case, that factual finding was not pivotal to the result. The court’s finding is explained in the following statement:
The record shows that the Dunns expended considerable efforts and incurred relatively substantial expense in setting up the trailer, all in good faith reliance on the permit. It is the opinion of this court that the plaintiff has acquired a vested right to the permit of which she cannot now be deprived.
| ^Immediately thereafter, the court set out the principle of law from 13 Am. Jura. 2d, Buildings § 10, that we have quoted above. The court noted its finding that the building permit was not issued as a result of error or mistake of fact or law only to *568 distinguish the case from Nassau Realty Co. v. City of New Orleans, 221 So.2d 327 (La.App. 4 th Cir.1969). We respectfully disagree with the dissent’s position that that fact was pivotal to the court’s decision.
Moreover, in this case, the record in this case contains no documents indicating that the City ever found that the building permit was issued as a result of- error or mistake. As noted above, the City specifically found no such error after the first review. The City’s own documents indicate that the only reason the second Stop Work order was issued was the City Council’s revocation of the conditional use permit. The record contains no official documents in which the City found that the building permit was improperly issued pri- or to the issuance of the Stop Work order. The fact that the City has now chosen to make that assertion is insufficient to overcome Mr. St. Raymond’s right to exercise his constitutionally-protected property vested property right in the permit. Accordingly, the trial court judgment denying Mr. St. Raymond’s writ of preliminary injunction is hereby reversed. Preliminary injunction prohibiting the City from enforcing the Stop Work order issued June 17, 1999, is hereby issued. The case is remanded for further proceedings.
REHEARING GRANTED; PREVIOUS OPINION RECALLED; TRIAL COURT JUDGMENT REVERSED; PRELIMINARY INJUNCTION ISSUED.
WALTZER, J., DISSENTS WITH REASONS.

. The first time we considered this appeal, we; failed to review the City’s exception to subject-matter jurisdiction because the trial court’s disposition of that exception was not before us. However, the exception is a part of the record and therefore may be used to establish or corroborate facts asserted by Mr. St. Raymond.

. We agree with the City and the dissent’s assertion that the interoffice memorandum issued by the Assistant City Attorney, in and of itself is insufficient to prove that the City’s actions were arbitrary in this case. However, since it was an action taken by the City, it may be considered in conjunction with the City’s other actions in order to determine whether the City acted arbitrarily.