ROSEMARY LEDET, Judge.
I,This is a zoning dispute. The property owner, Cheryl Ellsworth, made an after-the-fact request for a rear yard setback *899 variance, which the City of New Orleans Board of Zoning Adjustments (“BZA”) denied. On Ms. Ellsworth’s appeal, the district court reversed the BZA’s decision. From the district court’s decision, the defendants (the City of New Orleans and the BZA) and the Intervenor (William David Davas) appeal to this court. Because the BZA reviewed the required variance criteria, because the record contains sufficient evidence to support the BZA’s finding that all the variance criteria were not met, and because the BZA’s decision was not arbitrary or capricious or an abuse of discretion, we reverse the district court’s decision and reinstate the BZA’s decision.
FACTUAL AND PROCEDURAL BACKGROUND
Ms. Ellsworth owns property located at 1311-1313 Vignaud Street in New Orleans, Louisiana (the “Property”). Pursuant to the City of New Orleans Comprehensive Zoning Ordinance (“CZO”), the Property is subject to a twenty⅝>0⅜⅛ rear yard setback requirement.[1] Before Ms. Ellsworth began the work in question, the structure located on the Property was a one-story, classic Victorian residence that was built to match the adjacent house. The structure had an enclosed rear room (porch) that protruded five feet into the required twenty foot rear yard setback, resulting in a fifteen foot rear yard setback. The five foot encroachment was considered an existing, non-conforming use — it was “grandfathered in.”
On March 14, 2011, Ms. Ellsworth obtained a permit from the Department of Safety and Permits to “remove and replace sheetrock wherever necessary, and remove window and replace with recessed door.” (“Permit One”). Permit One did not allow for exterior or structural work. Nor did it allow for demolition. Nonetheless, in March and April 2011, Ms. Ellsworth commenced the demolition of more than one half of the structure, including the protruding rear room. On March 28, 2011, a stop work order was issued for exceeding the scope of the permitted work.
On May 10, 2011, Ms. Ellsworth obtained a second permit to construct a cam-elback addition and a rear porch on the Property. (“Permit Two”). On August 17, 2011, the Department of Safety and Permits issued a stop work order for exceeding the scope of Permit Two; the reason given for the stop work order was as follows:
|sThe scope of work under this permit has been exceeded. The 1st floor has been demolished and reconstructed. The plans show existing 1st floor. The reconstruction and addition are over 50%. Need HDLC [Historic District Landmarks Commission] and zoning [BZA] approval along with new plans.
On August 22, 2011, the Department of Safety and Permits issued a “Referral for Action,” which referred Ms. Ellsworth to the BZA for a waiver of “rear yard setback existing 15'-proposed 10.'”
On January 25, 2012, the Department of Safety and Permits allowed Ms. Ellsworth to “dry in” the walls and roof of the house to prevent further damage to the interior.
On March 14, 2012, Ms. Ellsworth applied to the BZA for a variance. Her variance application listed the waiver amount as “10'” and the purpose of the variance as to match the pre-existing shed and identical set-back to identically built structure next door. Her variance application was considered at the BZA’s May 14, 2012 meeting. At that meeting, the BZA *900 was presented with a staff report that described the request as to permit an addition to the rear of an existing two-family residence causing insufficient minimum rear yard depth (after the fact). The staff report further indicated that “[b]ecause the applicant demolished the portion of the existing first floor that included the encroachment any existing nonconforming encroachments were lost” and thus a ten foot waiver is required. Although the staff report concluded that the nine criteria for granting a variance (discussed elsewhere in this opinion) had only been “partially satisfie[d],” it recommended modified approval of the request. The recommended approval was ^subject to several conditions, including that “[t]he applicant shall meet all life-safety requirements as required by the Department of Safety and Permits.”
At the May 14, 2012 BZA meeting, the Board was presented with letters, affidavits, and testimony from Ms. Ellsworth’s neighbors in opposition to the variance request. After hearing arguments from Ms. Ellsworth, in support, and her neighbors, in opposition, of the variance request, the BZA determined that all nine variance criteria were not met. The BZA thus denied Ms. Ellsworth’s variance request.
Ms. Ellsworth appealed the BZA’s decision to the district court and applied for a writ of certiorari to review the BZA’s decision. In her appeal and petition for writ of certiorari to the district court, Ms. Ells-worth joined as defendants the City and the BZA. Mr. Davas filed a petition to intervene and to unite with the defendants, the City and the BZA. Mr. Davas averred that his interest in the matter was his ownership of property adjacent to Ms. Ellsworth’s property. He further averred that he would be negatively impacted by the granting of the variance. Ms. Ells-worth did not oppose the intervention, which the district court granted.
The parties filed cross motions for summary judgment, which the district court denied. The parties also moved to present additional testimony outside the record pursuant to La. R.S. 33:4727(E)(4). Finding additional testimony unnecessary for proper disposition of this matter, the district court denied the motion. At the outset of the hearing on the merits, the district court provided the following history of the case to put on the record of the appeal:
[flCheryl Ellsworth owns a piece of property located at 1311 and — 13 Vig-naud Street in the Esplanade Ridge, a local historic district in the Bayou St. John neighborhood. This district is classified as an historic district, and it is only subject to demolition review and demolition by neglect.
This case involves the plaintiffs attempt to seek a, quote, after-the-fact variance for her property, which intrudes ten feet onto the required 20-foot rear yard setback. The subject property is located on an irregular-shaped rectangular lot. The original residence of the property, prior to plaintiffs reconstruction, provided a rear yard depth of 15 feet, making the existing residence a nonconforming structure. This nonconforming structure status was grandfathered in at the time, permits were issued for construction on the property, but not without conditions to retention of the nonconforming status.
This case is a dispute regarding whether plaintiffs reconstruction of the property exceeded the scope of the permit she obtained from the City, such that she lost her nonconforming status and should have been required to obtain a variance to the permit.
*901 On March 14th, 2011, plaintiff was granted a permit to remove and replace sheetrock as necessary. There was some exterior work on the home in March and April of 2011. There was some demolition of the structure on April 4th, 2011. She was issued a Certification of Review from the Historic District Landmarks Commission.
There was a second building permit to construct a camel-back addition and a rear porch on the property. The permit was granted based upon the documentation of two sets of plans that plaintiff has, in fact, submitted. There was then, at some point, a stop work order, and now we are here to figure out what is going on.
Following arguments from the parties, the district court found in Ms. Ellsworth’s favor and rendered judgment reversing the BZA’s decision and granting Ms. Ells-worth’s request for a ten foot variance pursuant to her March 14, 2012 application. The district court, following the BZA staffs report, also ordered that “[t]he applicant shall meet all life-safety requirements as required by the Department of Safety and Permits.” The district court provided the following reasons for judgment:
| ^Plaintiff, Cheryl M. Ellsworth, was issued permits for the reconstruction of a non-conforming porch and a camelback addition onto a two-family residence. The City Planning Commission determined the porch lost its non-conforming status after the Department of Safety and Permits permitted the construction of the porch since the reconstruction of the porch increased the extend [sic] of the non-conformance by an extra five feet in length. When the building permit for the camelback was issued, the construction of the camelback was considered permitted because the building footprint was being built straight up from existing encroachments.
Ms. Ellsworth submitted site plans and elevation plans for the construction of the camelback addition to the residence. After the balcony was constructed, the Department of Safety and Permits took the position that it missed the five foot balcony because it was not shown on the site plans, but was shown on the elevation plans, and advised Ms. Ellsworth would be required to apply for a five foot waiver for the protrusion of the balcony into the airspace above the rear yard setback in addition to the five foot waiver for the porch. Ms. Ells-worth, justifiably relied, to her detriment, on the building permits issued allowing construction of the porch and camel back addition with a balcony. “When in reliance thereon, work upon the building is actually commenced and liabilities [are] incurred for work and materials, the owner acquires a vested property right to the protection of which he is entitled.” St. Raymond v. City of New Orleans, 769 So.2d 562, 199[9]-2438 (La.App. 4 Cir. 5/17/00).
The record reflects properties adjacent to Ms. Ellsworth’s property have similar encroachments into the rear yard area ranging from 0' to 15'. The BZA staff report in the record reflects no detriment to the public welfare or injury to other property in the neighborhood in which the property is located. The proposed height of approximately 24' meets the maximum height limitation of forty feet (40'). Strict adherence to the property regulations would require plaintiff, Cheryl M. Ellsworth, to demolish ten feet of the residence that encroaches into the required rear yard and side areas. The ruling of the BZA was arbitrary and capricious in that permits had previously been awarded and *902 its reasons for denial are inconsistent with the neighboring properties.
From this decision, the City, the BZA, and Mr. Davas appeal.
STANDARD OF REVIEW
The jurisprudence has recognized that “the decisions of the BZA, while subject to judicial review under La. R.S. 33:4727(e), are subject to a presumption of validity and are subject to judicial review only as to whether they are arbitrary, 17capricious or an abuse of discretion.” French Quarter Citizens For Preservation of Residential Quality, Inc. v. New Orleans City Planning Comm’n, 99-2154, p. 3 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 18-19 (citing Curran v. Board of Zoning Adjustments, 90-1441 (La.App. 4 Cir. 04/16/91), 580 So.2d 417, 418; Lake Forest Inc. v. Board of Zoning Adjustments of City of New Orleans, 487 So.2d 133, 135 (La.App. 4th Cir.1986); Cross v. City of New Orleans, 446 So.2d 1253, 1255 (La.App. 4 Cir.1984)). The jurisprudence has further recognized that “[t]he reviewing court may not simply substitute its own judgment for that of the BZA.” Id. The jurisprudence has still further recognized that it “ ‘is not within the province of the appellate court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public.’ ” Toups v. City of Shreveport, 10-1559, pp. 5-6 (La.3/15/11), 60 So.3d 1215, 1218 (quoting TSC, Inc. v. Bossier Parish Police Jury, 38,717 (La.App. 2 Cir. 7/14/04), 878 So.2d 880).
DISCUSSION
“The purpose of a variance is to provide relief from the literal terms of a zoning ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thereby amount to confiscation.” State ex rel. Maple Area Residents, Inc. v. Board of Zoning Adjustments, 365 So.2d 891, 894 (La.App. 4th Cir.1978) (Lemmon, J., concurring) (citing 2 Anderson, AMERICAN LAW OF ZONING § 14.02 (1968)). The Comprehensive Zoning Ordinance provides nine criteria to be applied by the BZA in authorizing a variance. CZO, Art. 14, § 14.6.4, (l)-(9).[2] *903 Unless it determines that all nine criteria are met, the BZA cannot |8grant a variance. Samuel v. City of New Orleans Bd. of Zoning Adjustments, 03-0604, pp. 5-6 (La.App. 4 Cir. 9/17/03), 857 So.2d 1075, 1078; Curran, supra.
In this case, the record reflects that the BZA considered all nine criteria and determined that all the criteria were not met. Reversing the BZA, the district court reasoned that “[t]he BZA staff report in the record reflects no detriment to the public welfare or injury to other property in the neighborhood in which the property is located.” The district court thus found that Criteria (8) was met; Criteria (8) provides: “[t]he granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.” CZO, Art. 14, § 14.6.4(8).
The appellants contend that the district court, in finding Criteria (8) was met, ignored the substantial evidence presented by the neighbors regarding the negative effects of granting the variance request. According to the appellants, the neighbors 19established that Ms. Ellsworth’s newly-constructed house “out-sizes the surrounding properties and looms over the neighboring yards, blocking access to light and an open view.” The appellants further note that “[d]ue to [Ms. Ellsworth’s] oversized new construction and its loss of a Victorian appearance, ... [the] neighbors testified that they feared that [Ms.] Ells-worth’s construction has decreased the value of their own properties.” The appellants still further note that the Louisiana Supreme Court in Toups, supra, reaffirmed the principle that citizen testimony is significant in zoning decisions. The appellants thus submit that the district court erred in finding Criteria (8) was met. We agree.
As noted, the district court, in its reasons for judgment, relied upon the BZA staff report. The BZA staff report was written before the BZA hearing. As we have noted, a BZA staff report is “preliminary in nature and essentially does little more than to summarize the issue for the Board. It is only one consideration the Board uses in making its decision.” McPherson v. City of New Orleans Board of Zoning Adjustments, 04-1129 (La. 4 Cir. 5/11/05), 902 So.2d 573 (unpub.). Regardless, the BZA staff report pertaining to Ms. Ellsworth’s request expressly noted that “the staff believes the request partially satisfies the nine criteria as they pertain to the requested variance.” The staff report thus did not conclude that all nine criteria were met as required for the BZA to grant a variance.
In addition to the staff report, the BZA received an abundance of testimony and evidence from Ms. Ellsworth’s neighbors. The public opinion voiced by her neighbors is a valid consideration that the BZA is entitled to consider in ruling on a variance request. Toups, supra. The jurisprudence has long recognized that “ ‘expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what | inbenefits the public good.’ ” Toups, 10-1559 at p. 5, 60 So.3d at 1218 (quoting King v. Caddo Parish Commission, 97-1873, p. 16 (La.10/20/98), 719 So.2d 410, 419 (quoting Four States Realty Co. v. City of Baton Rouge, 309 So.2d 659, 666 (La.1974))). In this case, one neighbor’s letter to the BZA summarized the evidence in opposition to the variance request as follows: “[Ms. Ellsworth’s newly-constructed] structure as is, is intrusiveness of the adjacent property owner’s privacy, has caused decreased property values of the adjacent and surrounding properties, and a potential fire *904 hazard due to the additional second story and close proximity to other properties.” Given the opposing evidence presented by the neighbors coupled with the preliminary nature of the BZA staff report, we find, contrary to the district court, that the record does not support a finding that Criteria (8) was met.
Another criteria indirectly mentioned in the district court’s reasons for judgment is Criteria (4), which provides that “[g]ranting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures,- or buildings in the same district or similarly situated.” CZO, Art. 14, § 14.6.4(4). The district court states that “[t]he record reflects properties adjacent to Ms. Ellsworth’s property have similar encroachments into the rear yard area ranging from 0' to 15.'” The district court thus concludes that the BZA’s ruling was arbitrary and capricious in that “its reasons for denial are inconsistent with the neighboring properties.”
In relying on Criteria (4), however, the district court failed to recognize that the other neighboring properties, referred to in the BZA staff report, have different yard depths and apparently have legal nonconforming uses. In contrast, as discussed elsewhere, the Property lost its nonconforming use when Ms. Ellsworth | n demolished her original five foot encroachment without a permit. The district court’s finding that the surrounding properties have similar encroachments thus is not supported by the record.
Regardless, even assuming, arguendo, that Criteria (4) was met, there is no evidence in the record establishing the other eight criteria, especially Criteria (8), all were met. See Tolis v. Cooper, 522 So.2d 594 (La.App. 1st Cir.1988) (rejecting similar argument in support of an after-the-fact request for a side yard setback variance).[3] Stated otherwise, the BZA’s denial of Ms. Ellsworth’s variance request, based on detriment to the neighborhood, was appropriate regardless of whether her ten foot encroachment is similar to others in the surrounding area.
In sum, we cannot conclude, based on the record before us, that the BZA was arbitrary, capricious, or abused its discretion in finding that all nine variance criteria were not met.
Ms. Ellsworth asserts three independent grounds — not dependent on the variance criteria — in support of her argument that the district court correctly found she was entitled to the variance; to wit: (i) irregularities in BZA proceeding, (ii) the Special Yard exception, and (iii) the vested right doctrine. We separately address each of the three independent grounds.
*905 | w(i) Irregularities in BZA proceeding
Ms. Ellsworth cites Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977), for the proposition that the applicable standard of review includes determining if the BZA’s decision is “supported by substantial and competent evidence adduced in proceedings which are regular and orderly.” Id. She contends that the BZA’s proceeding in this case was fraught with irregularities and thus failed to satisfy that standard. She contends that the BZA improperly altered the Board of Safety and Permits “Referral for Action,” which stated that she only needed a five foot waiver of the rear yard setback. She further contends that given the BZA considered an “illegally altered waiver request,” the district court was within its discretion to ignore the BZA’s decision and to substitute its decision for that of the BZA.
The gist of Ms. Ellsworth’s contention is that the BZA erred in finding that she lost her nonconforming use status for the original five foot encroachment. Both the facts and the law belie her contention. Factually, the record reflects that Ms. Ellsworth requested, in the Variance Application that she completed on March 14, 2012, a ten foot waiver (variance);[4] and the BZA denied her request for a ten foot waiver. Her reliance on the Department of Safety and Permits’ “Referral for Action” form, dated August 22, 2011, to establish she only requested a “5'” waiver is misplaced.[5] The Referral for Action form, dated over six months earlier than her Variance Application, is not the actual application on which the BZA ruled. Both the BZA’s ruling and the district court’s rulings were based on Ms. Ellsworth’s March 14, 2012, Variance Application.
| ^Legally, Ms. Ellsworth’s contention that the BZA lacked the authority to override the Department of Safety and Permits determination, allegedly set forth in its Referral for Action, that she did not lose her nonconforming status is not persuasive. Under the CZO, a demolition of a nonconforming structure results in the loss of the nonconforming use status.[6] Before obtaining Permit Two, which authorized the rebuilding of the porch, Ms. Ellsworth demolished more than half of the original structure, including the nonconforming five foot encroachment. In so doing, she lost her nonconforming use. Ms. Ellsworth’s contention that the BZA proceeding was fraught with irregularities is therefore unpersuasive.

(ii) The Special Yard Exception

Ms. Ellsworth next contends that, regardless of whether the nine variance criteria all were met, she is entitled to a ten foot variance under the Special Yard *906 Exception set forth in CZO Article 14, § 7.4, which provides:
The Board may grant the following yard exceptions:
1. An exception in the yard regulations on a lot which abuts another lot on which front, side, or rear yard is similar to the exception applied for.
Ms. Ellsworth failed to raise the Special Yard Exception before the BZA. Although she raised the exception before the district court, the district court did not address it in its reasons for judgment. In support of her contention that it is appropriate for this court nonetheless to consider the exception on this appeal, Ms. | MEllsworth cites this court’s unpublished decision in McPherson v. City of New Orleans Board of Zoning Adjustments, 04-1129 (La.App. 4 Cir. 5/11/05), 902 So.2d 573 (unpub.).[7]
In the McPherson case, both the district court and this court considered the Special Yard Exception, despite the applicant’s failure to raise it before the BZA. Agreeing with the district court, this court cited the Special Yard Exception as additional support for affirming the BZA’s decision to grant a variance. The record in the McPherson case supported the finding that all nine variance criteria were met. This court, like the district court, found the record additionally supported a finding that the Special Yard Exception applied because the exact rear setback of the abutting property was undisputed. Neither of those circumstances is present in the instant case. In this case, the record — contrary to the district court’s conclusion and in accord with the BZA’s conclusion — does not support a finding that all of the nine variance criteria were met. Nor is the exact rear yard setback of the abutting property undisputed. Ms. Ellsworth’s reliance on the McPherson case is thus misplaced.
Ms. Ellsworth’s attempt to present new evidence on appeal in support of the applicability of the Special Yard Exception is misplaced. The jurisprudence is well settled that this court’s review is limited to the evidence in the record. See Miccol Enterprises, Inc. v. City of New Orleans, 12-0864, pp. 6-7 (La.App. 4 Cir. 12/19/12), 106 So.3d 746, 750-51 (noting that “[a] court of appeal is a court of record, which must limit its review to evidence in the record before it” and citing Miller v. Crescent City Health Care Center, 08-1347, p. 7 (La.App. 4 Cir. 5/28/09), 24 So.3d 891, 898 (Tobias, J., concurring in part and dissenting in part) |1B(citing La. C.C.P. art. 2164)).[8] Nor do we accept Ms. Ellsworth’s invitation to take judicial notice of the size of her adjacent neighbor’s rear yard setback. We thus find her contention that the Special Yard Exception applies unpersuasive. We, however, reserve Ms. Ells-worth’s right to reapply to the BZA for a variance based on the Special Yard Exception.

(Hi) The Vested Rights Doctrine

Ms. Ellsworth’s final argument, which the district court accepted, is that she “justifiably relied, to her detriment, on the building permits issued allowing construction of the porch and camelback addition with a balcony.” Quoting from St. *907 Raymond, v. City of New Orleans, 99-2438, p. 4 (La.App. 4 Cir. 5/17/00), 769 So.2d 562, 565, the district court states that “[w]hen in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vest property right to the protection of which he is entitled.” Id. The district court thus concludes that the BZA was arbitrary and capricious in that “permits had previously been awarded.”
On appeal, the City contends that Ms. Ellsworth did not have a vested right in the addition to the Property because her reliance on the permit allowing the new construction is unjustified. In support, the City cites jurisprudence standing for the proposition that no such property right vests when the reliance is unjustified based on the applicant’s own actions. See Pailet v. City of New Orleans, Dep’t of Safety and Permits, 433 So.2d 1091, 1096 (La.App. 4th Cir.1983); see also Parish of Jefferson v. Davis, 97-1200 (La.App. 5 Cir. 6/30/98), 716 So.2d 428, 433-34. The City contends that Ms. Ellsworth cannot justifiably rely on Permit Two because it 11fiwas granted based on misrepresentations and because she exceeded the scope of the permit.
The Department of Safety and Permits issued Permit Two based on documentation and site plans submitted by Ms. Ells-worth that were incorrect in at least the following two respects: (1) failing to disclose that any portion of the structure already had been demolished, and (2) representing that the new construction would not expand the footprint of the Property.[9] As previously discussed, Ms. Ellsworth’s pre-permit demolition of over one half the structure resulted in her loss of her nonconforming use status and required that she obtain a variance before rebuilding on that original five foot encroachment. Ms. Ellsworth’s expansion of the original five foot encroachment out an additional five feet for a balcony likewise required she obtain a variance. Moreover, as the City points out, Ms. Ellsworth was issued multiple stop orders for exceeding the scope of both permits that she was issued. Thus, Ms. Ellsworth’s contention that she justifiably relied on the issuance of the permits is belied by the record.
In finding the vested rights doctrine inapplicable, we further note that the doctrine “applies by its own terms only to arbitrary revocation of a valid building permit,” and that “[njothing in the record gives the [property owner — here Ms. Ells-worth] the right to build a structure that violates the City’s Comprehensive Zoning Ordinance.” St. Raymond, 769 So.2d at 569-70 (Waltzer, J., dissenting). We further note that Permit Two, on its face, expressly admonishes that “THIS PERMIT CONVEYS NO RIGHT TO VIOLATE ANY PROVISION OF THE JjjNEW ORLEANS AMENDMENTS TO THE STANDARD BUILDING CODE OR THE COMPREHENSIVE ZONING ORDINANCE.” Accordingly, the district court’s finding that Ms. Ellsworth justifiably relied on the permits she was issued is not supported by the record; and the district court’s reliance on the vested rights doctrine is misplaced.
In sum, none of Ms. Ellsworth’s three independent grounds for maintaining the district court’s decision is persuasive. As noted at the outset, we reverse the district court’s decision and reinstate the BZA’s decision because the BZA reviewed the required nine variance criteria, because the record contains sufficient evidence to *908 support the BZA’s finding that the variance criteria all were not met, and because the BZA’s decision was not arbitrary or capricious or an abuse of discretion.

DECREE

For the forgoing reasons, the judgment of the district court is reversed; and the decision of the Board of Zoning Adjustments is reinstated. Ms. Ellsworth’s right to reapply to the Board of Zoning Adjustments to seek a variance based on the Special Yard Exception is reserved.
REVERSED

. CZO Article 4, Section 4.5.7 (Table 4.E). A rear yard setback is the area of empty space required between the back end of a structure and the rear property line.

.The nine Section 14.6.4 criteria are as follows:
1. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
2. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
3. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property.
4. Granting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
5. The variance, if granted, will not alter the essential character of the locality.
6. Strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner, as distinguished from mere inconvenience.
7. The purpose of the variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s) [sic],
8. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
9. The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public street, or increase the danger of fire, or endanger the public safety.
CZO, Art. 14, § 14.6.4, (l)-(9).

. Rejecting similar argument, the court in Tolis reasoned as follows:
Cooper also contends that other homes were built with five foot side yard setbacks and, therefore, standard (d) [here Criteria (4) ] was met. Even if we assume appellee is correct, there is still no evidence that standards (a), (c) and (f) [here (1), (3), and (5)] were met. There is nothing peculiar about Lot 199. Cooper clearly had knowledge of the A-3 zoning requirement when he submitted his building permit application, whether it was actual or constructive knowledge. Cooper had actual knowledge of the A-3 zoning requirement prior to the pouring of the slab. No “demonstrable hardship” would have been imposed on Cooper to simply conform his construction to his plot plan at that time. Cooper poured the slab even though it did not comply with the side yard setback in his permit or the zoning ordinance. Because there is positive zoning law in this case, we may not apply equity to resolve it. La.C.C. art. 21; Kuntsler v. Friedler, 376 So.2d 572 (La.App. 4th Cir.1979).
Tolis, 522 So.2d at 599.

. In her application, dated March 14, 2012, Ms. Ellsworth lists the "waiver amount” as "10'.”

. As noted elsewhere, the "Referral of Action” form states: "waiver of rear yard setback existing 15'-proposed 10.'”

. See BZA Article 13, Section 13.5.1 (providing that "[bjuildings which are nonconforming only as to height, Floor Area Ratio, yard areas, lot area per family, or parking may be maintained, structurally altered or increased in cubical content, provided such alteration or increase in cubical content shall not further increase the extent of the nonconfor-mance or permit an increase in the number of dwelling units.”); see also BZA Article 13, Section 13.2.2 (providing that “[n]onconform-ing uses are inconsistent with the objectives of the Comprehensive Zoning Ordinance, which is to confine certain classes of buildings and uses to certain localities, and thus, it should be viewed narrowly and have all doubts resolved against the continuation or expansion of nonconformity in order to preserve the property rights of adjacent property owners.”)

. Ms. Ellsworths also points out that apparently the only case to consider the CZO Special Yard Exception is the unpublished McPherson case. See La. C.C.P. art. 2168 (authorizing the citation of posted, unpublished appellate opinions).

. Although the appellants in their brief request that we strike the additional evidence Ms. Ellsworth attaches to her brief, the appellants failed to file a motion to strike. Regardless, as noted elsewhere, we find that such evidence is not properly before us on appeal.

. Ms. Ellsworth also represented that the value of the project was only $30,000. Although the appellants contend that the record reflects that Ms. Ellsworth's work far exceeded this amount, she disputes this fact. We find it unnecessary to resolve this factual dispute.