591 So.2d 733 (1991)
DOUG REED ENTERPRISES, INC.
v.
The CITY OF BATON ROUGE and the Parish of East Baton Rouge, et al.
No. 90 CA 1575.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
*734 E. Wade Shows, Ray M. Caraway, Baton Rouge, for plaintiff-appellant Doug Reed Enterprises, Inc.
Stephen Wilson, Baton Rouge, for defendant-appellee City of Baton Rouge and EBRP.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
This is a suit for declaratory and injunctive relief. Plaintiffs seek to enjoin the enforcement of Ordinance 9001, as amended by Ordinance 9051, which was enacted by the Metropolitan Council of the City of Baton Rouge and the Parish of East Baton Rouge. Plaintiffs allege that the ordinance regulating vehicle towing and storage is in violation of the United States Constitution, the Louisiana Constitution, and LSA-R.S. 45:180.1.
Plaintiffs are the owners of wrecker businesses within the Parish of East Baton Rouge and the cities of Baton Rouge and Zachary. They attack the entire ordinance as facially invalid, as opposed to any particular *735 application or enforcement of it. The trial court denied the injunction, and the plaintiffs appeal alleging the following errors.
1. The trial court erred in finding that the ratemaking methodology utilized by the Metropolitan Council did not violate the Fifth and Fourteenth Amendments of the United States Constitution and Article 1 sections 2, 3, & 4 of the Louisiana Constitution of 1974.
2. The trial court erred in finding that the challenged ordinance does not conflict with specific prohibitions found in LSA-R.S. 45:180.1.
3. The trial court erred in finding that a rational basis does exist for Sections 7(2) and 15(A)(7) of the challenged ordinance.
4. The trial court erred in finding that the challenged ordinance is not unconstitutionally vague, either in whole or in part.
5. The trial court erred in finding that plaintiffs failed to present sufficient evidence to justify the granting of a preliminary injunction.[1]

BACKGROUND
In February of 1989, a special committee created by the Metropolitan Council began meeting to discuss revision of the ordinance which then regulated vehicle towing and storage. The ordinance was revised after the committee researched and held approximately 30 meetings over a period of a year which were attended and participated in by the members of the wrecker industry. On December 12, 1989, after the required public hearing, the Metropolitan Council adopted Ordinance 9001. Shortly thereafter the plaintiffs filed suit for injunctive relief. Pursuant to an agreement between the parties a temporary restraining order was issued by the trial court to allow time for the Council to amend the ordinance. On February 14, 1990, the Metropolitan Council adopted Ordinance 9051, which amends several portions of Ordinance 9001. The ordinance, as amended, and reenacted, became effective on March 1, 1990. The trial court denied a preliminary injunction on the ordinance as amended.
The challenged ordinance regulates in great detail almost every aspect of vehicle towing and storage, including maximum rates which may be charged for "emergency tows", storage requirements, hours of operation, vehicle requirements, and insurance. The ordinance also establishes "unspecified" wrecker lists which are maintained by the Baton Rouge police department. The Baton Rouge police force is directed to call wrecker companies from those lists for towing and storage services when the driver of a vehicle which is disabled in an accident within the city limits does not specify a particular tow company.[2] Only permitted and licensed businesses are eligible for the wrecker lists, and the police department is directed to make calls for such services on a strictly rotational basis.
In order to obtain injunctive relief under LSA-C.C.P. art. 3601 the moving party must show that the injury, loss or damage he will suffer may be irreparable if the injunction does not issue. He must further show that he is entitled to the relief sought and must make a prima facie showing that he will prevail on the merits of the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La.1979).
"A showing of irreparable injury, however, is not necessary when the deprivation of a constitutional right is involved.... When a violation of federal due process or of state property protection guarantees is shown, a court may enjoin the constitutional violation." South Central Bell Telephone Co. v. Louisiana Public Service *736 Commission, 555 So.2d 1370, 1373 (La. 1990).
Because the plaintiffs attack several portions of the ordinance under different theories we will address the appropriateness of injunctive relief as to each portion of the ordinance below.

ASSIGNMENT OF ERROR NUMBER 1
Plaintiffs contend that the trial court erred in finding that the rate making methodology utilized by the Council did not violate the Fifth and Fourteenth Amendments of the United States Constitution and Article 1 sections 2, 3, & 4 of the Louisiana Constitution.
The challenged ordinance provides that the maximum charge for "emergency tows" is $50.00 during the hours of 7 a.m. to 7 p.m. on weekdays and non-holidays and $65.00 during the hours of 7 p.m. to 7 a.m.; on Saturdays, Sundays and all holidays. These maximum rates apply only in situations where wreckers are summoned by the police to the scene of an accident, an owner's vehicle is towed without their desire or permission at the request of a private property owner on whose property the vehicle is improperly parked, and in situations where vehicles are impounded at the request of the police. The wrecker companies are free to charge any amount which the market will bear to a customer who simply calls them for towing services, including those instances where a automobile owner is in an accident and calls the wrecker himself without going through the police.
Prior to the 1989 revision of the ordinance the maximum rate which could be charged for an "emergency tow" was $80.00[3], however, the wrecker companies were required to pay the city a $30.00 fee for vehicles which were impounded. The present ordinance has eliminated the requirement to pay the city any fee for towing and storing impounded vehicles.
The plaintiff argues that the methodology used by the counsel to set the rates was unconstitutional because the counsel based its rate decrease on rates charged in other metropolitan areas without comparing those metropolitan areas to East Baton Rouge parish.
Although the Committee members testified that the rate decrease was primarily based upon towing rates from other metropolitan areas in other parts of the state and country they also considered information from individuals in the wrecker business concerning the increase in the cost of doing business. Additionally, the committee received information concerning various towing contracts which had been negotiated in the private sector[4] and with the city[5].
The plaintiff contends that because the Council did not consider evidence of local economic conditions and financial information on operating a local wrecker company, the rate-making methodology was unconstitutional.
According to LSA-R.S. 45:180.1 C. the Public Service Commission has the authority "to fix reasonable and just rates, fares, tolls or charges for the commodities furnished or services rendered by persons engaging in the operation [of wreckers or towing services]". Furthermore, LSA-R.S. 45:180.1 F. provides that "[m]unicipalities and parishes may, by ordinance, regulate, control, supervise and govern the business of operation and use of wreckers and towing devices in the manner provided under this section until such time as the public service commission shall pass uniform regulations applicable thoughout (sic) the state".
Plaintiff suggests that the same methodology used to determine rates for river *737 pilotage and public utilities should apply to the rate making process for wrecker services. Citing, Giallanza v. Louisiana Public Serv. Com'n., 412 So.2d 1369 (La.1982). In Giallanza the Public Service Commission increased the rates and charges for services rendered by river port pilots and further ordered that 20 additional river port pilots be added. On review of the order of the Public Service Commission the Louisiana Supreme Court explained that:
In regulating fees for the public service of river pilotage it is evident that the Public Service Commission necessarily must follow a procedure similar to that which it employs in regulating the rates of a public utility.... The primary purpose of its rate making process is to set pilotage fees at such a level that the pilots' revenues will be sufficient to permit them to both pay their legitimate operating expenses and to provide them compensation for their services and investment adequate to maintain efficient, economical and reliable pilotage service, giving due regard to the length, draft and tonnage of the vessels to be piloted, the difficulty and inconvenience of the particular service and the skill required to render it, the supply and demand for pilotage services, and other factors relevant to reasonable and just ratemaking. La R.S. 34:1122 ... When this level is achieved the pilots' revenues may be said to produce a fair rate of return, and rates which produce such a return are reasonable and just.
In reviewing this rate making process the inquiry of the judiciary is generally confined to a determination of whether the Public Service Commission acted unreasonably or arbitrarily in establishing fees for pilotage services....
Id. at 1373-1374. (Citations Omitted)
Initially we note that the evidence presented during the hearing on the preliminary injunction concerned only the methodology used to determine the rates. Although the plaintiffs presented testimony regarding increases in the cost of conducting their businesses, no evidence was presented that the rates as set would produce a less than fair return on their investments.
Therefore, the only question in the instant case is whether the Council acted unreasonably or arbitrarily in failing to consider whether the rates which it set are at such a level that the wrecker companies' revenues will be sufficient to permit the companies to pay their legitimate operating expenses and to provide them compensation for their services and investments adequate to maintain efficient, economical, and reliable service.
The problems in requiring local municipalities engaged in rate making for wrecker services to apply the same standards required of the Public Service Commission for establishing rates for river pilot fees and utilities are readily apparent. Unlike the monopolistic river pilot fees and utility fees, the towing fees affected by the instant ordinance are merely the rates for "emergency tows"; the remainder of the wrecker services is unaffected. Furthermore, there is no mandatory requirement that a wrecker company make "emergency tows". Additionally, there are more variables in determining a fair rate of return for wrecker companies as compared to determining a fair rate of return for a utility company. In order to determine a fair rate of return for wrecker companies the council would have to examine a cross section of wrecker businesses all with different amounts of investment capital, assets, and expenses. Moreover, unlike LSA-R.S. 34:1122, which exhaustively sets forth the relevant criteria for determining fees and charges for river pilots, LSA-R.S. 45:180.1 does not delineate any criteria for establishing rates for wrecker services.
Considering the evidence which was reviewed by the committee and the absence of any statutory criteria for determining "just and reasonable rates," we cannot say that the trial court was manifestly erroneous in its finding that the Council did not act unreasonably or arbitrarily in establishing rates for emergency tows.[6]

*738 ASSIGNMENT OF ERROR NUMBER 2
The trial court erred in finding that the challenged ordinance does not conflict with specific prohibitions found in LSA-R.S. 45:180.1.
First the plaintiff alleges that Section 2(a) of the ordinance violates LSA-R.S. 45:180.1 F. which provides:
Municipalities and parishes may, by ordinance, regulate, ... wreckers and towing devices ... provided that the authority herein granted to parishes shall not extend to such businesses within the corporate limits within any municipality lying within the parish.
Section 2(a)[7] of the ordinance makes it unlawful for any person to operate a wrecker vehicle in the city or the unincorporated areas of the parish without a permit. However, amended[8] section 23(4) provides that the ordinance shall not apply to "wrecker companies operating exclusively within the city limits of Baker and/or Zachary". Plaintiffs contend that notwithstanding amended section 23(4), the ordinance is still in violation of LSA-R.S. 45:180.1 F. because the ordinance would apply to any wrecker business in Baker or Zachary which travelled outside the city limits of those municipalities to perform such services.
We do not find that Section 2(a) of the ordinance violates the provisions of LSA-R.S. 45:180.1 F. The exclusionary language contained in section 23(4) makes it clear that the ordinance does not regulate wrecker businesses operating exclusively in Baker and/or Zachary. LSA-R.S. 45:180.1 does not prohibit the Council from regulating the operation of wreckers from other municipalities when they are operating within its jurisdiction.
The plaintiffs further argue that section 2(a) of the ordinance is impermissibly vague.
Since the ordinance provides for criminal as well as civil sanctions, the ordinance language must pass a strict vagueness test. The application of this strict test to economic regulation was explained in State Ex Rel. Guste v. K-Mart Corp., 462 So.2d 616, 621 (La.1985) as follows.
The statute `must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972); ....
However, these strict standards are tempered by the fact that the regulations under scrutiny are economic in nature, directed not to the general populace but rather to individuals in the business community.
`...Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its *739 own inquiry, or by resort to an administrative process....' Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).
In the instant case the plaintiffs claim that the ordinance does not make it clear whether a wrecker travelling beyond the municipal limits of Baker or Zachary, into East Baton Rouge Parish or the City of Baton Rouge, will be required to obtain a license from the Baton Rouge Police. We do not find the ordinance to be impermissibly vague. Although the plaintiffs' inquiry is valid, we believe that this is the type of inquiry which could have been easily clarified through the administrative processes suggested by the United States Supreme Court in Village of Hoffman Estates, supra.
Second, the plaintiff alleges that the ordinance is in violation of the penalty provisions of LSA-R.S. 45:180.1 F. which states in pertinent part:
The penalty for violation of such ordinances shall be no more severe than those contained in subsection (E) of this section.
LSA-R.S. 45:180.1 E. provides in pertinent part:
In addition to any other penalties imposed by this Chapter; no person shall violate any of the provisions of this section or any of the rules, regulations, orders or decrees of the commission promulgated pursuant to this section, or engage in the business of the operation and use of wreckers and towing services without first having obtained a certificate of public necessity and convenience from the commission. Whoever violates the provisions of this section shall be fined by the commissioner at open hearing not less than $100.00 nor more than $1000.00 for each violation.
Section 24 of the ordinance provides that any violation of the ordinance is a misdemeanor punishable by a fine of $100.00 to $1,000.00. Section 6 of the ordinance also provides for the removal of a company from the police call lists for 30 days for any violation of the ordinance. Sections 2(b)(4), 3(c)(4) and 5(b)(7) also refer to the suspension of a license or a permit for any violation of the ordinance. Plaintiffs argue that the combined effect of these penalty provisions violates LSA-R.S. 45:180.1 F. We disagree.
The penalties provided in LSA-R.S. 45:180.1 E. are "[i]n addition to any other penalties imposed by this Chapter". LSA-R.S. 45:166 A. which is found in the same Title and Chapter as LSA-R.S. 45:180.1 provides that:
Any certificate or permit may, in the discretion of the commission, be amended, suspended or revoked in whole or in part after notice and hearing for failure to comply ... with any lawful order, rule or regulation of the commission promulgated pursuant thereto, or with any term, condition or limitation of the certificate or permit.
Accordingly, we find that the penalty provisions of the ordinance do not violate LSA-R.S. 45:180.1 E. See Simon v. Lafayette Automotive, Etc., 532 So.2d 283 (La. App. 3d Cir.1988).
Third, the plaintiff contends that the fees charged by the ordinance specified as "application fees", "inspections fees" and "administrative fees" exceed the maximum "license fees" allowed under LSA-R.S. 45:180.1 D. which provides:
D. No person shall engage in the business of the operation and use of wreckers and towing services without first having obtained from the commission a wrecker license, the number of which shall be displayed on both sides of every wrecking vehicle he operates. The fee for such license shall not exceed ten dollars.
Sections 3(f) and 5(c) of the ordinance provide:
3(f) Application and Inspection Fee. At the time when an original or renewal application for an emergency or heavy duty wrecker permit is granted, and the Wrecker Inspections Officer has conducted the required inspection of said wrecker(s), the applicant must pay a single $25.00 application fee, and a $35.00 inspection *740 fee for each vehicle included within said original or renewal permit application.
5(c) Storage Facility Inspection Fee. At the time the original or renewal application for a wrecker company license is granted and the wrecker inspection officer has validated the application, the applicant must pay a $60.00 storage facility inspection fee and a $15.00 administrative fee if they wish to be on the police dispatch list.
We agree with the plaintiffs that the $25.00 application fee and the $35.00 vehicle inspection fee contained in section 3(f) clearly violates the provisions of LSA-R.S. 45:180.1 D. See Ind. Wrecker & Tow v. Calcasieu Par. Pol. Jury, 432 So.2d 1080 (La.App. 3d Cir.1983). However, we do not find that the $60.00 storage inspection fee or the $15.00 administrative fee contained in section 5(c) violates LSA-R.S. 45:180.1 because these fees are only required if a wrecker company wishes to participate in the police dispatch list and are not mandatory for obtaining a license.

ASSIGNMENT OF ERROR NUMBER 3
Plaintiff contends that the trial court erred in finding that a rational basis exists for section 15(A)(7) and section 7(2) of the ordinance. Plaintiffs claim that these sections of the ordinance fail to serve any legitimate public interest and are thus arbitrary and unconstitutional.
In order to conform to constitutional due process requirements, an ordinance regulating economic activity must bear a rational relationship to a legitimate governmental objective such as health, safety or welfare. McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
Section 15(A)(7) provides that:
(A) No wrecker company shall tow any vehicle at the request of the Police Department under Sections 11, 12, 13, or as a private property tow as defined in Section 1 of this ordinance without first having a storage facility approved by the Wrecker Inspections Officer.
(7) Every wrecker company must have a storage facility which is non-contiguous and physically separate from any other wrecker company's storage facility except that wrecker companies with mutually exclusive ownership may have storage facilities which are contiguous so long as each company's storage facility is easily identifiable and distinguishable and separated by a fence.
Mr. Babin, a committee member, testified that the purpose of the contiguous ownership provision was to prevent one wrecker company owner from splitting his lot into sections with fences, thereby creating new "companies" which could then secure more turns on the official "unspecified" call lists.
The qualifying language of paragraph (A) makes it clear that the non-contiguous provision only applies to those companies wishing to participate in the "unspecified" call lists. Accordingly two mutually owned businesses which are contiguous may only qualify for one listing on the unspecified call lists.
The purpose of prohibiting two mutually owned companies from procuring two spots on the police call lists is apparently to prevent one operator from gaining an unfair advantage over his competitors. We therefore conclude that this provision of the ordinance bears a rational relationship to a legitiamte governmental interest.
The plaintiffs also contend that no rational basis exists for the provisions of Section 7(2) which provides as follows:
All certificates [of insurance] shall contain... the following statement:
`The insurance covered by this certificate shall not be cancelled or materially altered except after ten (10) days prior written notice of such cancellation or alteration has been sent to the Baton Rouge Police Department by certified letter, return receipt requested.'
The plaintiff's contend that there is no rational basis for requiring a wrecker company's insurance certificate to have this exact language. The testimony at the hearing of the preliminary injunction revealed *741 that several wrecker companies were having difficulty in procuring insurance policies with the precise language contained in the ordinance. However, several companies were able to obtain the precise language in their policies. The committee members testified that according to the exact language of the ordinance, a company's license could be suspended or a penalty imposed for failure to comply with this section. However, committee member, Richard Redd testified that it was not the committee's intent to require the exact language of the ordinance; the purpose of the provision was to assure insurance coverage and notification in case of cancellation or alteration of the policy.
Considering the purpose of the required language, we find that Section 7(2) bears a rational relationship to a legitimate governmental interest.

ASSIGNMENT OF ERROR NUMBER 4
Plaintiff also contends that the trial court erred in finding that the challenged ordinance is not unconstitutionally vague.
The plaintiffs contend that several provisions of the ordinance are unconstitutionally vague because they do not allow an ordinary person to discern what is lawful and what is unlawful.
We have reviewed the provisions which the plaintiffs consider to be unconstitutionally vague and find no merit in their contentions for the same reasons which we expressed in plaintiffs' challenge of vagueness with regard to section 2(a) of the ordinance.
For the reasons set forth, the judgment of the trial court is amended to enjoin the enforcement of the provisions of section 3(f) of the ordinance which require the payment of a $25.00 application fee and a $35.00 vehicle inspection fee; in all other respects the judgment is affirmed. All costs to be shared equally by the plaintiffs and the defendants.
AMENDED, AND AFFIRMED AS AMENDED.
NOTES
[1] We will not address this assignment separately as the issue of injunctive relief will be discussed in conjunction with the remaining assignments of error.
[2] Although the ordinance requires permits for operations conducted in the unincorporated areas of East Baton Rouge Parish, no "unspecified" wrecker lists are established for those areas because the authority of the Baton Rouge Police Department does not extend beyond the city limits.
[3] The prior ordinance enacted in 1987 provided that the maximum rate for an emergency tow was $80.00, an increase of $25.00 over its predecessor.
[4] Mr. Richard Redd, a committee member, testified that during the committee meetings Mr. Brumfield, another committee member who represented the wrecker industry, stated to the committee that he "could tow all day for $30.00" per tow.
[5] Mr. Richard Redd, a committee member, testified that the committee was told that the city had a contract for towing in which it paid $22.00 or $23.00 per tow.
[6] We need not discuss whether the plaintiffs will suffer irreparable injury due to the rate decrease because the plaintiffs have not alleged such injury. Cf. South Cent. Bell Telephone v. Public Service Commission, 555 So.2d 1370 (La. 1990).
[7] Section 2(a) of the ordinance provides that:

(a) Required. It shall be unlawful for any person to drive or operate or cause to be driven or operated any auto wrecker upon any public street in the City or Parish for the purpose of towing vehicles without first obtaining an auto wrecker permit from the City-Parish as provided for herein duly issued to the owner to operate the auto wrecker on the streets of the City or Parish under the terms and provisions of this ordinance.
[8] After the plaintiffs filed suit for injunction the Council amended Ordinance 9001 adding Section 23(4). The ordinance as amended provides that:

This section shall not apply to:
(1) Car carriers that are capable of carrying five or more vehicles and have Interstate Commerce Commission authority.
(2) Tow trucks that are registered in another state with Interstate Commerce Commission authority.
(3) Tow trucks that are owned by a governmental entity and that are not used for commercial purposes.
(4) Wrecker companies operating exclusively within the city limits of Baker and/or Zachary.