779 So.2d 986 (2001)
Amy C. KRUGER and St. Charles 1, LLC
v.
The GARDEN DISTRICT ASSOCIATION, The Garden District's Security District, a/k/a The Garden District's Security Special Taxing District, The City of New Orleans, Betty Jefferson in her Official Capacity as the Assessor for the Fourth District, et al.
No. 2000-CA-1135.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2001.
Rehearing Denied February 15, 2001.
Writ Denied May 4, 2001.
*988 Louis R. Koerner, Jr., William F. Ridlon, II, Law Offices of Louis R. Koerner, Jr., New Orleans, LA, Counsel for Plaintiff/Appellee.
H. Alston Johnson, III, Phelps Dunbar, L.L.P., Baton Rouge, LA, and John H. Ryan, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge BAGNERIS, Judge TOBIAS, and Judge GORBATY.
TOBIAS, Judge.
This matter is before the court on the suspensive appeal of the defendant-appellant, Garden District's Security Special Taxing District ("GDSD"), from a judgment of the trial court granting a writ of preliminary injunction in favor of the plaintiffs-appellees, Amy C. Kruger and St. Charles 1, LLC (respectively, "Kruger" and "St. Charles"), on their claim that the statute creating GDSD is unconstitutional.
GDSD was organized pursuant to Act 86 of the 1998 First Extraordinary Session of the Louisiana Legislature ("the Act"), which enacted La. R.S. 33:2740.38.[1] The Act created the GDSD, designated the composition of its board of directors, and authorized a five-year property tax of not more than 19 mills on property within the district provided that the voters within the district's boundaries approved it at an election called by the City Council of New Orleans. The principal function of the GDSD as outlined in the enabling legislation is to promote and encourage security in the specific geographic area of the city of New Orleans known as the "Garden District"[2]. This is a service previously provided to some extent by the Garden District Association ("GDA"), a non-profit entity consisting of dues paying members from within the Garden District area. Membership is voluntary and dues are allotted per address. At the 3 November 1998 election, voters within the boundaries of the district were presented with the following proposition:
SUMMARY: A FIVE-YEAR SPECIAL ANNUAL AD VALOREM TAX OF NINETEEN (19) MILLS ON ALL TAXABLE REAL PROPERTY IN THE GARDEN DISTRICT FOR PROMOTING AND ENCOURAGING THE SECURITY OF THE GARDEN DISTRICT.
YES Shall the City of New Orleans levy a special annual ad valorem tax to be called the Garden District Security District Fee on all taxable real property situated within the boundaries of the Garden District Security District (which District is comprised of the area of the Parish of Orleans bounded by
NO and including both sides of Carondelet Street, Jackson Avenue, Magazine Street, and Louisiana Avenue) as specified by Resolution R-98-505 of the City Council of New Orleans in the amount of nineteen (19) mills annually for five (5) years, beginning in 1999 and ending in 2003, to be used solely and exclusively for promoting and encouraging the security of the Garden District neighborhood as determined and managed by the Board of Commissioners of the Garden District Security District?
The voters overwhelmingly voted in favor of the tax.
Kruger is a non-owner resident (i.e., tenant) of property in the Garden District. *989 St. Charles is a limited liability company which owns property in the Garden District and whose members are alleged in the petition to be both residents and owners of property in the Garden District. Kruger and St. Charles seek to have the statute creating the GDSD declared unconstitutional on grounds that the board of directors is composed of members selected in such a way as to abridge their basic constitutional rights. In their petition, Kruger and St. Charles aver that the dual requirement of property ownership and residence in the Garden District for appointment to the board of the GDSD is an abridgment of their constitutional right to equal protection under the law as neither of them meets both qualifications but both have an interest in the Garden District. They allege that the legislation is "arbitrary and capricious" in its allotment of taxes on the basis of property value instead of tenancy. They further anticipate the unlawful exercise of the police power, the unlawful deprivation of civil rights of various minorities, and the violation of several Louisiana laws. They do not allege that any of these events has already occurred. Moreover, and the impetus for this appeal, Kruger and St. Charles seek preliminary and permanent injunctive relief as set forth in their petition:
COUNT SEVEN TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
65.
Plaintiffs are entitled to temporary and permanent injunctive relief restraining defendants and all those in concert therewith from taking any further action to implement the unconstitutional law, to collect the unconstitutionally levied 19 mill assessment on the properties which they own or in which they live as tenants, to disburse the collected money to the Board, and against the contracting with or disbursement of any such funds by the Board.
66.
The tax bills implementing the 19 mill assessment provided by LSA-R.S. 33:2740.38 have been sent out, were due and collectible immediately, were delinquent by January 31, 1999, and eighty (80%) percent of which bills should have been collected.
67.
Inasmuch as tax bills have already been sent and received and the tax bills are delinquent as of January 31, 1999, the GDSD received bids and decided on a security contractor on January 29, 1999, and the GDSD patrol is to begin on March 15, 1999, there is insufficient time within which to have a hearing on the appropriateness of permanent injunctive relief. Accordingly plaintiffs are entitled to temporary injunctive relief suspending the implementation of the tax, the payment of collected tax funds, the entering into an unconditional contract or the payment of any funds thereunder pending the further order of this Court.
On 31 March 1999, the trial court heard GDSD's multiple exceptions and Kruger's and St. Charles's request for a writ of preliminary injunction. The matter was taken under advisement. On 10 September 1999, the trial court issued its judgment denying the GDSD's exceptions of insufficiency of service, lis pendens, no right of action, and no cause of action, finding that the statute was unconstitutional, and issuing a writ of preliminary injunction against the GDSD. The court did not address the GDSD's exceptions of prematurity, lack of subject matter jurisdiction, insufficiency of citation, and lack of personal jurisdiction. The GDSD suspensively appealed to the Supreme Court of Louisiana. The Supreme Court vacated the trial court's finding of unconstitutionality in the context of a summary proceeding and transferred the matter to this court for a determination solely of whether the preliminary injunction was properly granted. *990 Kruger v. Garden District Association, 99-3344 (La.3/24/00), 756 So.2d 309.
The trial court has preliminarily enjoined a public entity from operating based upon an incomplete record and its determination that certain constitutional rights have been violated. The effect of that decision is to prohibit the collection of a levied tax. We address the correctness of the trial court's issuance of the preliminary injunction from three directions: (1) the protection of constitutional right(s); (2) the suspension of a tax; and, (3) the balancing of risks and benefits. We find that each of these analyses leads us to the same conclusion: that the issuance of the writ of preliminary injunction was error. Thus, we vacate and remand.

I. Protection of Constitutional Rights

A writ of preliminary injunction may issue during the pendency of an action where irreparable injury, loss, or damage will result to the petitioner. La.C.C.P. art. 3601. Generally, to obtain preliminary injunctive relief, the petitioner must show that he will suffer irreparable injury, that he is entitled to the relief sought, and that he will prevail on the merits of the case. Id.; General Motors Acceptance Corporation v. Daniels, 377 So.2d 346 (La. 1979); Doug Reed Enterprises, Inc. v. City of Baton Rouge, 591 So.2d 733 (La.App. 1 Cir.1991). However, jurisprudence has indicated that an exception to the requirement of showing irreparable injury may exist in cases where the deprivation of a constitutional right is at issue. South Central Bell Telephone v. PSC, 555 So.2d 1370 (La.1990); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). If taken out of the context in which it arises, the violation of any constitutional right could arguably lead to irreparable harm. All injuries ultimately affect the constitutional rights of one party or another. We take a restrictive view of this judicially created exception.
In South Central Bell, supra, the Louisiana Supreme Court considered South Central Bell's direct appeal from the district court's denial of its petition seeking, in part, a preliminary injunction of an order of the Public Service Commission ("PSC"). The basis of South Central Bell's request for injunctive relief was that the PSC order which it sought to enjoin would result in an unconstitutional confiscation of its property. The injunction, if granted, would have maintained existing telephone rates. South Central Bell relied on jurisprudence which held that a court may enjoin the violation of federal due process or "state property" rights. Id. at 1373. The Louisiana Supreme Court reversed, finding that the preliminary injunction should have issued regardless of whether South Central Bell had shown a violation of its constitutional rights since it had also made a showing of irreparable injury.[3] Thus, the Court's decision stood independent from the allegation of a constitutional violation. The Court further required that South Central Bell furnish adequate security. Id. at 1375.
In Elrod, supra, the United States Supreme Court equated the denial of First Amendment rights with irreparable harm. However, Kruger and St. Charles do not allege First Amendment violations. Moreover, we previously considered Elrod and specifically refused to extend its language beyond its context. Hobbs v. Gorman, 595 So.2d 1264, 1267 (La.App. 4 Cir.1992).
In Hobbs, supra, we found that the violation of a constitutional right, in and of itself, was insufficient to circumvent the need of showing irreparable injury. Id. at 1267. The plaintiff alleged a violation of his "state property" rights. However, we held that even if the plaintiff had suffered a violation of his constitutional rights, he was not entitled to a preliminary injunction since he had an adequate remedy for *991 damages compensable in money. We noted that in both South Central Bell, supra, and Elrod, supra, the prevailing parties had successfully established the threat of "irreparable harm" in its ordinary meaning. Hobbs, supra at 1267.
Recently, this Court found that where the action sought to be enjoined directly violated a vested "state property" right, the petitioner was relieved of showing irreparable harm. St. Raymond v. City of New Orleans, 99-2438 (La.App. 4 Cir, 05/17/00), 769 So.2d 562, cert. denied, 00-2565 and 00-2566, 767 So.2d 697 (La.09/13/00). The St. Raymond decision was heavily grounded in its facts. The court's pivotal finding of fact was that the City of New Orleans had acted arbitrarily in seeking to revoke the petitioner's building permit despite his substantial detrimental reliance on that permit and substantial completion of construction of a multi-family dwelling on the property. St. Raymond, supra, is distinguishable from the matter at bar not only to the extent that it involved "state property" rights but also in light of the specific circumstances under which it arose. We restrict St. Raymond to its specific facts involving the construction of a building and revocation of an ordinance and building permit. Further, St. Raymond did not address injunctions insofar as they affect a tax.
In the matter now before us, we hold that where a petitioner, such as plaintiffs-appellees, seeks to preliminarily enjoin a public body from performing its statutorily authorized function and that petitioner has an adequate remedy at law without utilizing the extraordinary procedure of preliminary injunction, he should be required to proceed accordingly. Traditionally, injunction has been held to be a harsh, drastic and extraordinary remedy which should only issue where the petitioner is threatened with irreparable harm and has no adequate remedy at law. Kruger and St. Charles have not alleged, nor do circumstances indicate, any violation of due process. Furthermore, Kruger and St. Charles have not alleged that any of their property rights (other than their right to their money) are being threatened. The record before us fails to show either irreparable injury or a constitutional violation of sufficient impact to justify the issuance of a preliminary injunction.

II. Suspension of a Tax

We note that Count Seven of the petition specifically requests injunctive relief only from the collection or use of tax funds, stating in pertinent part as follows:
.... Accordingly plaintiffs are entitled to temporary injunctive relief suspending the implementation of the tax, the payment of collected tax funds, the entering into an unconditional contract or the payment of any funds thereunder pending the further order of this Court.
No reference is made to enjoining the GDSD or GDA from actually performing or providing security services. We further note that the legislatively authorized actions of the GDSD (other than the levying of a tax) are alleged to be precisely the same as those previously performed by the GDA but without any prior complaints from either Kruger or St. Charles of constitutional infringement. Their petition also alleges, as follows:
13.
.... the GDA's major activity and benefit, the private security patrol in the GDSD, has been and is currently privately funded by voluntary dues paid to the GDA by its members.
* * * * *
41.
The GDSD constitutes an unconstitutional use of public funds for the private purpose of supporting the heretofore private GDA private patrol and certain administrative costs of the GDA.
While Kruger and St. Charles raise legal issues appropriate for consideration by a trial court, their petition belies their goal *992 of suspending a tax which for the time being is presumed to be lawfully levied. They may not do indirectly that which they cannot do directly.
The only meaningful effect of a preliminary injunction in this case is to enjoin the collection of a tax authorized by the legislature and overwhelmingly approved by the voters, both of which are presumed to have made informed decisions. We are reticent to suspend the results of the properly executed democratic process by means of a summary proceeding seeking and granting a writ of preliminary injunction.
Moreover, Article VII, Section 3, of the Louisiana Constitution of 1974 strictly prohibits the issuance of process to restrain the collection of a tax:
The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.
The appropriate remedy for a grievance associated with the wrongful collection of a tax is set forth at La. R.S. 47:2110:
.... Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give him and the officer or agency that has given rise to the cause of action notice at the time of payment of his intention to file suit for the recovery of such tax.... If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the actual rate earned on the money paid under protest.... If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above ...
Id., Section A. The reasoning behind the prohibition, as evidenced by the nature of the remedy, is that the unlawful levying of a tax is fully compensable in money. This is consistent not only with our state constitution, but also with this court's restrictive view of granting a writ of preliminary injunction even in cases of alleged violations of constitutional rights. The issuance of the preliminary injunction had as its primary effect restraining the collection of a tax and, as such, was error.

III. Balancing of Risks and Benefits

The granting of preliminary injunctive relief may prevent certain injuries, yet lead to other injuries. La. C.C.P. art. 3608. To protect those enjoined, the party in whose favor the preliminary injunction issues must post security. La. C.C.P. art. 3610. It is the responsibility of the issuing court not only to require the security be posted but also to consider the adequacy of the security to compensate for any harm occasioned by the wrongful issuance of the preliminary injunctive relief. To effectively execute its responsibilities to the parties and community, the court should resort to a "duty-risk" analysis obliging it to weigh whether the potential for harm in erroneously providing injunctive relief is substantially greater than that created by refraining from providing such relief. As part of that analysis, the court must consider the extent to which the relative harms are compensable in money damages.
In the matter before us, we note that the stated purpose of the GDSD is the reduction of crime in the Garden District area. If the actions of the GDSD are wrongfully enjoined pending a full trial on the merits, then arguably the victims of crime occurring during the effective period of the preliminary injunction may be entitled to compensation. Parties so injured may state a cause of action against not only the GDSD but also Kruger and St. Charles. Additionally, it is the source of much concern and debate that many crimes, such as battery, rape and murder, cannot be adequately compensated by the payment of money. The wrongful levy of a tax, however, is fully compensable in a *993 suit for tax refund pursuant to La. R.S. 47:2110. Thus, we find that the damages that might be incurred by Kruger and St. Charles are much more likely to be quantified in money than those which might be incurred as a result of the wrongful granting of their request for a preliminary injunction. The duty-risk analysis under these circumstances leads us to conclude that the issuance of the preliminary injunction against the GDSD was error.

Conclusion
We find that the alleged constitutional injuries of the plaintiffs-appellees do not include due process violations or any significant property rights other than the payment of money for taxes to the GDSD. We further find that the only real issue presented by the petition as it relates to preliminary injunctive relief is whether these petitioners must now pay by means of a tax that which they previously enjoyed without complaint and free of charge. We also find that the legislature has provided an adequate remedy at law for the petitioners to recover wrongfully levied taxes.
For the foregoing reasons, we vacate the trial court's judgment granting a preliminary injunction against the GDSD. We remand for further proceedings consistent with this opinion.
JUDGMENT VACATED; REMANDED.
NOTES
[1] La. R.S. 33:2740.38 was subsequently renumbered as La. R.S. 33:2740.40 and is currently found at La. R.S. 33:9092.
[2] The Garden District as defined by La. R.S. 33:9092 is bounded by and includes both sides of Carondelet Street, Jackson Avenue, Magazine Street, and Louisiana Avenue. Kruger and St. Charles contend that the Garden District's boundaries should include the area east of Jackson Avenue to Josephine Street.
[3] If South Central Bell were to prevail on the merits, it would have had no remedy in the courts due to the statutory prohibition against retroactive rate making. La. Const. Art. 4, § 21(B); La. R.S. 45:1163.