Under the particular facts of this case, the unlawful conduct exception applies, and the DDD is not required to prove irreparable injury.
*931 The first element of the exception obliges us to determine whether the City's action - withholding the disputed portion of the DDD tax - directly violated a prohibitory law or the Louisiana Constitution. The record reflects no dispute that the City is withholding a portion of the DDD tax to defray the City's obligation to pay certain pension funds.[6] The City maintains that the DDD tax is an ad valorem tax, and that, by withholding the disputed portion of the DDD tax, the City is performing its statutorily authorized function under La. R.S. 11:82 to fund state retirement systems via the collection and remission of aggregate ad valorem tax proceeds. La. R.S. 11:82(A) states that "[a]d valorem tax contributions to state and statewide public retirement systems shall be as follows" and lists the eight specific retirement funds subject to the statute along with the percentage of "aggregate taxes shown to be collectible by the tax rolls of each parish" relative to each fund.[7]
*932 The DDD, however, contends that the DDD tax is a "dedicated tax" or "special tax," which the City is illegally diverting in violation of the Louisiana Constitution, state statutes, and the New Orleans Home Rule Charter. Specifically, the DDD relies on the following.
In City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund (" Assessors "), the Louisiana Supreme Court held:
The diversion of taxes dedicated to a specific purpose is expressly prohibited by La. Const. art. VI, §§ 26 (B) and 32, which provide as follows:
La. Const. Art. VI, § 26. Parish Ad Valorem Tax
(B) Millage Increase Not for General Purposes. When the millage increase is for other than general purposes, the proposition shall state the specific purpose or purposes for which the tax is to be levied and the length of time the tax is to remain in effect. All proceeds of the tax shall be used solely for the purpose or purposes set forth in the proposition . [Emphasis added.]
La. Const. Art. VI, § 32. Special Taxes; Authorization
Section 32. For the purpose of acquiring, constructing, improving, maintaining, or operating any work of public improvement, a political subdivision may levy special taxes when authorized by a majority of the electors in the political subdivision who vote thereon in an election held for that purpose.
This court has consistently interpreted the constitution to prohibit the use of dedicated and special taxes for purposes other than those for which they were levied.
2005-2548, p. 14 (La. 10/1/07), 986 So.2d 1, 13-14, on reh'g (1/7/08)(citing La. Const. art. VI, §§ 26 (B) and 32 ).
Similarly, La. R.S. 39:704 provides that the "proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied...." Likewise, the enabling statute states, in relevant part:
The city council, in addition to all other taxes which it is now or hereafter may be authorized by law to levy and collect, is hereby authorized to levy and collect ... a special ad valorem tax upon all taxable real property situated within the boundaries of the core area [downtown] development district.... The proceeds of said tax shall be used solely and exclusively for the purposes and benefit of the district. Said proceeds shall be paid over to the Board of Liquidation, City Debt, day by day as the same are collected and received by the appropriate officials of the city of New Orleans and maintained in a separate account. Said tax proceeds shall be paid out by the Board of Liquidation, City Debt, solely for the purposes herein provided upon warrants or drafts drawn on said Board of Liquidation, City Debt, by the appropriate officials of the city and the treasurer of the district.
La. R.S. 33:2740.3(I).
Additionally, Section 4-1301 of Chapter 13 of the New Orleans Home Rule Charter provides:
(1) The Department of Finance, headed by the Director of Finance, shall:
(a) Collect all taxes, license and permit fees, and other moneys which *933 may be due to or receivable by the City ...
...
(d) Prepare tax rolls and bills, including those required by state law.
...
(l) Permit no disbursements to be made except pursuant to authorizations adopted under the terms of this Charter or applicable State law.
...
(q) Approve all disbursements of funds held by the City.
Here, the DDD tax is a dedicated tax. It is evident from the record and the enabling statute that the DDD tax was dedicated by the voters specifically for enhanced services in the DDD. The enabling statute explicitly states that the "proceeds of said tax shall be used solely and exclusively for the purposes and benefit of the district." La. R.S. 33:2740.3(I). "A 'dedicated tax' is, quite simply, a tax that is dedicated for a specific purpose." Assessors , 2005-2548, p. 18, 986 So.2d at 16. "Under the constitution, taxes dedicated to a specific purpose cannot be used for another purpose." Id. As the Louisiana Supreme Court recognized, "when citizens are presented with a proposition that would impose a special tax for a specific purpose, and they approve the imposition of that tax, a covenant is created which must be respected and upheld." Id. (citing Denham Springs Econ. Dev. Dist. , 2004-1674, p. 14 (La. 2/4/05), 894 So.2d 325, 335 ). "Once citizens vote for a tax dedicated to one purpose, the tax cannot be used for a purpose other than that approved by the citizens." Id. "Any alteration of a prior dedication must be by vote of the people." Id. , 2005-2548, pp. 18-19, 986 So.2d at 16. "The constitution, at Article VI, §§ 26 (B) and 32, respects and upholds this most basic proposition." Id. , 2005-2548, p. 19, 986 So.2d at 16.
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Denham Springs Econ. Dev. Dist. , 2004-1674, p. 12, 894 So.2d at 334 (citing La. C.C. art. 9; La. R.S. 1:4). "[W]hen a law is susceptible of different meanings, 'it must be interpreted as having the meaning that best conforms to the purpose of the law.' " Id. (quoting La. C.C. art. 10 ). "Under our well-settled rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute (or by analogy, constitutional provision) to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter." Assessors , 2005-2548, p. 17, 986 So.2d at 15 (citing La. C.C. art. 13 ; Louisiana Mun. Ass'n v. State , 2004-0227, p. 36 (La. 1/19/05), 893 So.2d 809, 837 ; Hollingsworth v. City of Minden , 2001-2658, p. 4 (La. 6/21/02), 828 So.2d 514, 517 ). Pursuant to these principles, no conflict exists between La. R.S. 11:82 and the enabling statute, which would authorize the City to use dedicated taxes for purposes other than those for which the taxes were levied. The enabling statute prohibits the DDD tax from being used for purposes other than their dedicated purpose. Accordingly, La. R.S. 11:82 does not permit the City to withhold DDD tax proceeds to fund state retirement systems. The DDD has thus shown that it seeks to enjoin unlawful conduct.
Addressing the second element of the exception, the district court's judgment is not a mandatory injunction. "A mandatory injunction 'commands the doing of some action' and 'cannot be issued without a hearing on the merits.' "
*934 Yokum , 2012-0217, p. 9, 99 So.3d at 81 (quoting Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa , 2004-0270, p. 7 (La. App. 1 Cir. 3/24/05), 906 So.2d 660, 664 ). In contrast, "[a] prohibitory injunction is one that seeks to restrain conduct." Id. (citing Jurisich , 99-0076, p. 4, 749 So.2d at 599 ). The preliminary injunction herein orders the City to restrain conduct; specifically, the district court ordered the City to stop withholding the disputed tax proceeds from the DDD. The record and the law provide no support for the City's argument that the injunction mandates the City to undertake the affirmative act of changing its collection practices. The district court's judgment granted a prohibitory injunction, not a mandatory injunction. Because the injunction orders the City to refrain from violating prohibitory law and the Louisiana Constitution, the DDD satisfied the unlawful conduct exception and was not required to prove irreparable injury to prevail on a petition for preliminary injunction.
The City also relies on Kruger v. Garden Dist. Ass'n , 2000-1135 (La. App. 4 Cir. 1/17/01), 779 So.2d 986 for its argument that, because the DDD's complaint is tax-related, it is compensable in money damages and therefore not a proper subject for an injunction. Kruger is distinguishable because, under those particular facts, this Court found no direct violation of a prohibitory law or due process. Id. , 2000-1135, p. 7, 779 So.2d at 991. Thus, this Court found that the petitioners were required to prove irreparable injury and failed to meet their burden of proof. Similarly, in Harvey , 2014-0156, p. 28, 183 So.3d at 704, this Court found no violation of a prohibitory law, such that the unlawful conduct exception did not apply; under those facts, the petitioner could not prove irreparable injury because his damages, lost sales, were compensable in money. Consequently, the City's first, second, and third assignments of error lack merit.
In its fourth assignment of error, the City contends that the preliminary injunction is vague and overly broad. La. C.C.P. art. 3605 provides that an "order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained." The City cites to several cases for the proposition that an injunction that merely orders compliance with the law, but fails to name the parties or describe the specific acts enjoined, is vague and insufficient. See Wells One Investments, LLC v. City of New Orleans , 2017-0415, p. 5 (La. App. 4 Cir. 11/2/17), 231 So.3d 54, 58 ; Weaver v. Chimneywood Homeowners Ass'n, Inc. , 2001-1444, p. 4 (La. App. 4 Cir. 1/30/02), 809 So.2d 1071, 1074 ; Miller v. Knorr , 553 So.2d 1043, 1046 (La. App. 4th Cir. 1989) ; Lenfants Caterers, Inc. v. Firemen's Charitable & Benev. Ass'n of New Orleans , 386 So.2d 1053, 1055 (La. App. 4th Cir. 1980). All of these cases, however, are factually dissimilar, and none of the defects ascribed to these cases are present here. The judgment on appeal reads, in pertinent part as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's Request for Preliminary Injunction is hereby GRANTED . Defendants, the City of New Orleans and Norman White in his Capacity as Director of Finance, are prohibited from withholding and/or diverting the proceeds of the special ad valorem tax, specifically approved by a vote of the citizens of New Orleans for the exclusive benefit of the DDD, for any purpose other than the exclusive benefit of the DDD, except for a 2% collection fee, in compliance with La. R.S. 33:2740.3(I).
*935 It is readily apparent that the parties subject to the preliminary injunction are identified. The acts enjoined are also sufficiently described: the City is restrained from withholding more than a 2% collection fee from the DDD tax. The City's argument, that the judgment lacks sufficient detail by not describing the City's obligations under La. R.S. 11:82, is likewise without merit. As the injunction explicitly prohibits the City from withholding more than the 2% collection fee from the DDD tax proceeds, it is evident that the district court rejected the City's argument that that it is entitled to withhold additional sums, under the auspices of La. R.S. 11:82, to fund its State retirement system obligations.
Louisiana law also provides no basis for the City's complaint that the district court's oral ruling was vague. Appellate courts review judgments and not reasons for judgment. Wooley v. Lucksinger , 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572. A district court's oral reasons for judgment form no part of the judgment and "do not alter, amend, or affect the final judgment being appealed." Id. , 2009-0571, pp. 77-78, 61 So.3d at 572 (quotation omitted). Even if a district court's oral reasons conflict with its written, signed judgment, the written judgment prevails. Kirby v. Poydras Ctr., LLC , 2015-0027, p. 11 (La. App. 4 Cir. 9/23/15), 176 So.3d 601, 607.
The City also complains that the injunction "has no temporal limitations." However, a preliminary injunction remains in effect from the time "the parties restrained ... receive actual knowledge of the order" until it is dissolved or modified by further orders of the court. La. C.C.P. arts. 3605, 3607. The preliminary injunction is "designed to preserve the status quo as it exists between the parties, pending trial on the merits." Faubourg Marigny Imp. Ass'n, Inc. , 2015-1308, p. 12, 195 So.3d at 615. "The principal demand for a permanent injunction, however, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit-issues." Id. , 2015-1308, p. 13, 195 So.3d at 615 (quotation omitted).
Finding no merit in the City's assignments of error, we affirm the district court's grant of the preliminary injunction in the DDD's favor.
We now turn to the DDD's answer to the appeal, wherein the DDD contends that the district court erred in denying its request for mandamus. An appellate court reviews a district court's judgment denying a writ of mandamus under an abuse of discretion standard. Chaisson v. State, Dep't of Health & Hosps. through Registrar of Vital Records , 2017-0642, p. 5 (La. App. 4 Cir. 3/7/18), 239 So.3d 1074, 1078, writ denied , 2018-00540 (La. 5/25/18), 243 So.3d 567. "[F]indings of fact in a mandamus proceeding are subject to a manifest error standard of review." Id.
"Mandamus is an extraordinary remedy which should be applied only where ordinary means fail to afford adequate relief." Bd. of Trustees of Sheriff's Pension & Relief Fund v. City of New Orleans , 2002-0640, p. 2 (La. 5/24/02), 819 So.2d 290, 292 (" Sheriff's ")(citing La. Assessors' Retirement Fund, et al. v. City of New Orleans, et al. , 2001-735, p. 2 (La. 2/26/02), 809 So.2d 955 ; Smith v. Dunn , 263 La. 599, 268 So.2d 670, 672 (1972) ). "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law." Id. (citing La. C.C.P. art. 3863 ). A " 'ministerial duty' is one in which no element of discretion is left to the public officer, in *936 other words, a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." Chaisson , 2017-0642, p. 5, 239 So.3d at 1078. "A public official cannot be compelled to exercise discretionary authority via a writ of mandamus and a writ of mandamus will not be issued in doubtful cases." Id. , 2017-0642, pp. 5-6, 239 So.3d at 1078. "The writ should be issued only in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." Sheriff's , 2002-0640, p. 2, 819 So.2d at 292 (citing La. C.C.P. art. 3862 ; Smith , 268 So.2d at 672 ).
The DDD argues that a writ of mandamus is warranted because the delay in obtaining ordinary relief would cause injustice. The DDD acknowledges in its petition, by combining its request for mandamus with alternative claims for declaratory judgment and damages, that another remedy is available through which the DDD can seek the disputed amounts through ordinary procedure. The DDD contends, however, that its claim is "time-sensitive" because the DDD's taxing authority expires in 2029, and the DDD requests that the district court take judicial notice of unpaid judgments and settlements owed by the City, which have been outstanding for 20 years. The DDD alleges that the City began withholding the disputed portion of the tax proceeds in approximately 2007. The DDD argues that, while it did not file its petition until 2018, it has been trying to reach a resolution with the City since that time. The district court's oral reasons reflect that it rejected the DDD's arguments that its claims were time-sensitive. Considering the facts of record, the district court properly found that the DDD failed to meet its burden to show that a delay in obtaining ordinary relief would cause injustice sufficient to warrant the issuance of a writ of mandamus. The district court did not abuse its discretion in denying the writ of mandamus. The DDD's answer to the appeal is denied.
Lastly, we address the City's motion for this Court to take judicial notice of the DDD's budget hearing testimony on November 20, 2018. The City submits that DDD representative Anthony Carter testified that the DDD has a budget surplus, which is being reserved for capital investments. The City contends that this testimony is relevant to: (1) the City's exceptions, particularly, whether the DDD is a separate juridical entity from the City; (2) whether the DDD proved it would suffer irreparable injury if the injunction is denied; and (3) whether the DDD is entitled to mandamus due to delay in obtaining ordinary relief. The City argues that the meeting was open to the public and video footage of the hearing was broadcast on television and streamed on the city council's website.
This hearing did not take place until after the judgment on appeal was rendered, and the testimony could not have been before the district court in determining the DDD's entitlement to a preliminary injunction or mandamus. Likewise, the testimony could not be part of the record sent to this Court. This Court can only consider an exception filed for the first time in this Court if proof of the exception appears in the record . La. C.C.P. art. 2163. La. C.C.P. art. 2164 provides that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal ." (Emphasis added). "An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence." City of Hammond v. Parish of Tangipahoa , 2007-0574, p. 5 (La. App. 1 Cir. 3/26/08), 985 So.2d 171, 176 (declining *937 to take judicial notice of minutes of parish council meeting held after district court rendered judgment). Additionally, as described above, the DDD was not required to prove irreparable injury because it sought an injunction to prohibit unlawful conduct. The testimony therefore is not relevant to the DDD's burden of proving its entitlement to a preliminary injunction under the facts of this case. The motion is denied.
For the reasons set forth in this opinion, the exceptions of no cause of action and no right of action and the motion to take judicial notice are denied, and the judgment of the district court is affirmed.
AFFIRMED; EXCEPTIONS DENIED; MOTION DENIED
BELSOME, J., CONCURS IN THE RESULT
CHASE, J., CONCURS IN THE RESULT
BELSOME, J., CONCURS IN THE RESULT
I respectfully concur in the result of the majority opinion. However, I write separately to discuss the trial court's denial of the Downtown Development District's request for writ of mandamus. While I agree with the trial court's denial of the request, it is important to note that there are unresolved prescription issues that additionally warranted the denial of the request. For these reasons, I do not find that the trial court abused in denying the request for a writ of mandamus. Accordingly, I concur in the result of the majority to affirm this appeal.

The judgment on appeal permits the City to withhold a 2% collection fee from the DDD tax. None of the parties dispute the City's authority to do so, and this fee is not raised as an issue in this appeal.

In its entirety, La. R.S. 11:82 reads:
A. Ad valorem tax contributions to state and statewide public retirement systems shall be as follows:
(1) Assessors' Retirement Fund. Dedicated funds are .25% (1% for Orleans Parish) of aggregate taxes shown to be collectible by the tax rolls of each parish.
(2) Clerks' of Court Retirement and Relief Fund. Dedicated funds are .25% (.5% for Orleans Parish) of aggregate taxes shown to be collectible by the rolls of each parish.
(3) Municipal Employees' Retirement System of Louisiana. Dedicated funds are .25% of aggregate taxes shown to be collectible by the tax rolls of each parish except Orleans; funds collected from the parish of East Baton Rouge are to be distributed pursuant to R.S. 11:1862. These amounts are split between Plan A and Plan B based on active member payroll.
(4) Parochial Employees' Retirement System of Louisiana. Dedicated funds are .25% of aggregate taxes shown to be collectible by the tax rolls of each parish except Orleans and East Baton Rouge. These amounts are split between Plan A and Plan B based on active member payroll.
(5) Sheriffs' Pension and Relief Fund. Dedicated funds are .5% of aggregate taxes shown to be collectible by the tax rolls of each parish.
(6) District Attorneys' Retirement System. Dedicated funds are .2% of aggregate taxes shown to be collectible by the tax rolls of each parish.
(7) Registrars' of Voters Employees' Retirement System. Dedicated funds are .0625% of aggregate taxes shown to be collectible by the tax rolls of each parish.
(8)(a) Teachers' Retirement System of Louisiana. Dedicated funds are one percent of aggregate taxes shown to be collectible by the tax rolls of each parish except Orleans.
(b) Effective with the 2004 tax roll payment, the Teachers' Retirement System of Louisiana shall credit each city, parish, or other local public school system located completely within East Baton Rouge Parish with an amount equal to one percent of the aggregate taxes shown to be collectible by the tax rolls for any millage levied by that school system plus an amount equal to the percentage of the total aggregate taxes collected by that school system of all aggregate taxes collected by all school systems within the parish of one percent of the aggregate taxes shown to be collectible by the tax rolls for any millage levied by an entity other than a school board remitted to the system from East Baton Rouge Parish.
(c) Within thirty days after the effective date of Subparagraph (b) of this Paragraph, the East Baton Rouge Parish School Board, the Baker City School Board, and the Zachary Community School Board shall file with the Teachers' Retirement System of Louisiana and the assessor for East Baton Rouge Parish a formula to be used to calculate the amount to be credited to each school board.
B. Provided, however, in the event the employer contributions become zero and employee contributions and dedicated taxes prescribed in this Section provide more than the total actuarially required contribution to any system, then the Public Retirement Systems' Actuarial Committee shall determine the amount of the aggregate taxes shown on the tax rolls of each parish that shall be remitted to such retirement system.